**E.F. HUTTON & CO., INC.,**
**Petitioner–Appellant,**

v.

**George HADLEY, Bankruptcy Trustee, Inc., Trustee for the liquidation of GIC Government Securities, Inc., Respondent–Appellee.**

No. 89–3394.

United States Court of Appeals,
Eleventh Circuit.

May 21, 1990.

As Amended May 24, 1990.

Richard Candelora, Tampa, Florida, Marvin E. Barkin, for petitioner-appellant.

Michael C. Addison, Randolph A. Fabal, Charles Ketchey, Jr., Tampa, Fla., for respondent-appellee.

Before FAY and COX, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

FAY, Circuit Judge:

This case requires determination of whether or not a bankruptcy trustee can assert the claims of customer creditors, who have paid the bankrupt in full for securities purchased for them by the bankrupt. Based upon its previous finding of standing for the bankruptcy trustee to pursue these creditor claims pursuant to a motion to dismiss, the district court denied summary judgment on the issue of standing and also certified this question pursuant to 28 U.S.C. § 1292(b). *Hadley v. E.F. Hutton & Co.*, 707 F.Supp. 509 (M.D.Fla. 1989). Upon review of the evidence presented by the parties on this issue, we conclude that the bankruptcy trustee did not have standing to bring the creditors' claims. We, therefore, vacate the ruling of the district court and remand for dismissal of this case for lack of standing.

## I. BACKGROUND

### A. Facts

GIC Government Securities, Inc. (GIC), based in Tennessee, is a dealer in govern-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

ment-backed mortgage securities. GIC began operating in Florida in 1982. From February, 1983, until October, 1985, GIC had a margin account with appellant E.F. Hutton & Co., Inc. (Hutton).

GIC's margin account with Hutton permitted it to purchase securities by paying a portion of the purchase price, with Hutton loaning GIC the balance. The GIC–Hutton margin agreement includes the following relevant provisions: 1) Hutton held the securities purchased by GIC as collateral until GIC paid the balance in full, 2) Hutton had the right to sell these securities held as collateral and to apply the proceeds to reduce GIC's margin whenever Hutton desired, and 3) Hutton was entitled to charge interest on GIC's borrowing. This action concerns two occasions when Hutton sold GIC–purchased securities held as collateral and applied the proceeds to diminish GIC's margin indebtedness.

In July, 1985, Hutton sold approximately $2,000,000.00 of GIC–purchased securities, $1,700,000.00 of which were securities for which customers had paid GIC in full. In September, 1985, Hutton sold approximately $3,000,000.00 of GIC–purchased securities, all of which were securities for which GIC customers had paid GIC in full. Although GIC had been paid in full by its customers for the securities that it purchased from Hutton, full payment was not received by Hutton from GIC because GIC purchased the securities through its margin account. Hutton sold these fully paid GIC customer securities in accordance with its margin agreement with GIC.

In operating its "Ponzi" scheme, GIC diverted for its own purposes funds paid by its customers for securities purchased by GIC from Hutton. The fully paid customer securities at issue in this case were entered in Hutton's records under GIC's account. After discovery and even at oral argument, however, counsel could not tell this court the names that appeared on the certificates, and admitted that they did not know whether the individual certificates were in the name of the customer who fully paid GIC for the security, GIC, or in street name (bearer).

In October, 1985, GIC filed for bankruptcy. Appellee George Hadley was appointed bankruptcy trustee for GIC in November, 1985. Hutton sold the remaining securities in GIC's account, paid itself the existing margin indebtedness, and relinquished the residual proceeds of $2,500,000.00 to the bankruptcy trustee. There has been no evidence in this case whatsoever that the GIC customer creditors, who had paid in full for the securities purchased for them by GIC from Hutton, ever delegated, authorized or desired that the bankruptcy trustee pursue any possible claim with respect to their securities. At oral argument, counsel represented that a similar lawsuit against Hutton has been brought by some GIC customer creditors in state court and that the bankruptcy trustee has made claims against various parties in bankruptcy court.

B. Procedural History

In October, 1987, the bankruptcy trustee Hadley sued Hutton in state court. The complaint alleged negligence by Hutton for allowing GIC to open a margin account, conversion for selling the collateral and applying the proceeds to GIC's indebtedness, and improper charging of interest on the margin account. Hutton removed the case to district court on the basis of diversity jurisdiction. Among its affirmative defenses, Hutton contended that Hadley, as bankruptcy trustee, lacked standing to assert claims on behalf of customer creditors of the bankrupt debtor as opposed to the bankrupt entity, GIC.

Hutton moved for dismissal or, alternatively, for summary judgment on numerous grounds. Hutton claimed that it had no knowledge or information that the GIC account with Hutton contained securities or funds of customers, and that Hutton had been advised that the GIC account was for the purchase of securities by GIC for subsequent sale to customers. Moreover, Hutton asserted that the bankruptcy trustee did not have standing to bring claims relating to individual property rights of GIC customers. The district court denied Hutton's motion and found, without explana-

tion, that the bankruptcy trustee Hadley had standing to maintain this action. R2–24–2.

Following the district court's ruling that Hadley had standing, Hutton moved for reconsideration of its previous motion, and specifically requested summary judgment on the issue of standing of the bankruptcy trustee. Hutton again argued that Hadley, on behalf of the bankrupt, did not have standing to assert claims that belonged to individual customer creditors. The district court's order denying Hutton's motion for reconsideration clarified that it had considered the issue of standing only as a motion to dismiss in its previous order and that summary judgment was premature as to all other issues because discovery had not occurred. Reiterating its previous position that granting Hutton's motion to dismiss was inappropriate because the trustee Hadley might be able to prove facts entitling him to relief, the district court assessed the parties' positions:

Plaintiff readily admits that a bankruptcy trustee cannot assert claims solely for the benefit of an identifiable group of creditors (here GIC customers). However, Plaintiff denies that that is the situation in this case. Plaintiff's complaint clearly contains allegations that Hutton owed a duty to GIC, breached it, and that GIC was damaged by that breach. Plaintiff asserts that GIC had legal title to the account at issue, clearly distinguishing it from the cases where the bankruptcy trustee had no legal or equitable interest and asserted claims solely for the benefit of creditors of the estate.

R2–40–4.

Thereafter, discovery ensued. Hutton's expert analyzed Hutton's account records in order to determine whether the bankruptcy trustee was asserting claims that belonged to the GIC creditor customers or to the entity GIC. Hadley's expert examined GIC's records to identify customers who had paid for their securities in full. There has been no dispute in this case that the only securities involved are those for

which GIC customers had paid in full. Counsel for bankruptcy trustee Hadley conceded at oral argument that this case has never been directed to claims of the entity GIC, but rather to those of GIC customers who fully paid GIC for securities.[1]

After discovery, both parties moved for summary judgment. Hadley sought summary judgment as to the claims against Hutton for negligence, conversion and the improper charging of interest on GIC's margin account as well as to Hutton's affirmative defenses that it was a bona fide purchaser and that the applicable statute of limitations barred the action. Hutton again moved for dismissal or summary judgment essentially on three grounds relevant to this appeal. First, all actions taken by Hutton were in accordance with its contractual agreement with GIC. Furthermore, GIC neither informed Hutton that the securities in its account were for GIC customers, nor did GIC ever instruct Hutton to segregate or maintain the subject securities for GIC customers. Second, the bankruptcy trustee Hadley had no standing to assert any claim against Hutton on behalf of GIC customer creditors. Third, recovery by trustee Hadley was barred by the doctrine of *in pari delicto*, since GIC misappropriated funds of its customers for its own use and the bankruptcy trustee stood in the shoes of GIC.

The district court granted summary judgment to Hadley as to Hutton's affirmative defense of statute of limitations for the negligence and conversion claims, and denied summary judgment as to time barring for the improper charging of interest claim and Hutton's affirmative defense that it was a bona fide purchaser. The district court specifically denied summary judgment regarding Hutton's claim that Hadley lacked standing to assert the claims of the GIC customer creditors and generally denied summary judgment to Hutton on all other issues. With respect to the standing issue, the district court stated that it had addressed this issue in two previous orders, found standing for the trustee Had-

---

1. It would have been most helpful had this fact been made clear to the district court.

ley to bring this suit, and that it readopted the reasoning and decision of those orders.

*Sua sponte,* however, within the same order the district court stated regarding the standing issue and pursuant to 28 U.S.C. § 1292(b) that it was "of the opinion that this portion of the order concerns a controlling question of law as to this cause, to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation in this cause." *Hadley,* 707 F.Supp at 512. The district court granted Hutton's motion for stay pending appeal, and certified the standing issue for interlocutory appeal. Accordingly, we decide this interlocutory appeal on the narrow standing issue, which we find dispositive of this case.

## II. ANALYSIS

### A. The District Court's Ruling

This case comes to us in an unusual posture procedurally. While the district court denied Hutton's summary judgment motion as to the lack of standing of the bankruptcy trustee to assert the claims of the customer creditors of the bankrupt, it also certified the issue to this court as an interlocutory appeal. Furthermore, the district court permitted full discovery in this case. Our analysis, therefore, is influenced by the procedural history.

 Standing, a "threshold inquiry," properly is the basis to dismiss the complaint if it is found to be lacking. *Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A July 1981). We would have granted Hutton's initial motion to dismiss for the reasons discussed herein, and thus would have been required to accept as true all of the bankruptcy trustee's material allegations. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Steele v. National Firearms Act Branch,* 755 F.2d 1410, 1414 (11th Cir.1985); *Pollard v. Cockrell,* 578 F.2d 1002, 1006 (5th Cir. 1978). Since a motion to dismiss occurs at the inception of litigation and standing is a preliminary jurisdictional matter, a trial court resolves this issue without consider-

ing the likelihood of success on the merits. *Federal Deposit Ins. Corp. v. Morley,* 867 F.2d 1381, 1387 (11th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989); *Steele,* 755 F.2d at 1413; *see Warth,* 422 U.S. at 498, 95 S.Ct. at 2204–05; *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 n. 4 (11th Cir.1987). The district court, however, denied the motion to dismiss, allowed discovery, and reconsidered the standing question on a summary judgment motion by Hutton. Because we are reviewing the district court's finding of standing for the bankruptcy trustee "based upon a fully developed record, we must evaluate standing 'from all materials of record.'" *Pollard,* 578 F.2d at 1006 (quoting *Warth,* 422 U.S. at 502, 95 S.Ct. at 2207).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Supreme Court has held that "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, the Court has explained that "the substantive law will identify which facts are material" and the substantive evidentiary burden under which the district court must consider the evidence in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Following a proper summary judgment motion, demonstrating the absence of genuine issues of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celo-*

*tex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

In this case, there is no dispute regarding the facts material to the issue of standing. The bankruptcy trustee Hadley represents the bankrupt GIC, but is asserting here claims relating solely to fully paid securities of specific GIC customer creditors. We, therefore, must examine the substantive law of standing and bankruptcy to determine if Hadley has standing to pursue such claims. *See Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987).

### B. Standing

#### 1. General Principles of Standing

The constitutional concerns of standing have been described as follows:

> "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III". *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Essentially, "the question is whether the person whose standing is challenged is a proper party to request an adjudication o[f] a particular issue and not whether the issue itself is justiciable". *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Plaintiffs in the federal courts must have a "personal stake in the outcome" of the case, *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and "must allege some threatened or actual injury resulting from the putatively illegal action". *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). "Abstract injury is not enough.... The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

*Pollard*, 578 F.2d at 1005–06.

■ In order to analyze standing, the Supreme Court has formulated a two-component framework, consisting of "irreducible" constitutional requirements and prudential considerations. *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Morley*, 867 F.2d at 1386; *Saladin*, 812 F.2d at 690. Satisfaction of the constitutional requisites for standing necessitates the demonstration of three factors. First, the party asserting standing must have suffered actual injury or show the imminence of such injury. *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. at 758; *Morley*, 867 F.2d at 1386; *Saladin*, 812 F.2d at 690; *see Gladstone*, 441 U.S. at 99, 99 S.Ct. at 1607; *Steele*, 755 F.2d at 1413–14. Abstract harm is insufficient; the litigant must establish "actual or threatened injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Smith v. Meese*, 821 F.2d 1484, 1494 (11th Cir.1987). Second, the injury must be fairly traceable to the alleged unlawful conduct. *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. at 758; *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Morley*, 867 F.2d at 1386; *Steele*, 755 F.2d at 1414. Third, a demonstration must be made that the requested relief likely will redress the injury. *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. at 758; *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Morley*, 867 F.2d at 1386; *Steele*, 755 F.2d at 1414. When standing has been contested, it is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." *Steele*, 755 F.2d at 1414 (citing C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3522 at 63–65 (1984)); *Morley*, 867 F.2d at 1389.

■ After satisfying these constitutional requirements, a party claiming standing also must demonstrate that prudential considerations do not restrain the trial court from hearing the case. *Morley*, 867 F.2d at 1386. The Court recognizes

three considerations which discourage judicial action despite a party's satisfaction of the constitutional prerequisites for standing: (1) assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision. *Valley Forge Christian College*, 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Morley*, 867 F.2d at 1386; *Saladin*, 812 F.2d at 690; *see Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *Davis Forestry Corp. v. Smith*, 707 F.2d 1325, 1328 (11th Cir.1983). The party alleging standing must surmount all of these prudential concerns.

■ Under the constitutional requirements of standing, we find the bankruptcy trustee Hadley to be deficient. He has conceded that he is asserting the claims of GIC customer creditors rather than the entity GIC, which he represents. The subject GIC customer creditors never delegated to Hadley the authority to pursue their claims. Furthermore, the injury to these customer creditors is not entirely the fault of Hutton, but in part is because of GIC's misappropriation of the funds of its customers who paid GIC in full for securities that GIC purchased through its margin account with Hutton. Therefore, finding standing in Hadley would not redress the injury because the implicated GIC customer creditors may pursue causes of action against GIC and/or Hutton. Analysis of the prudential considerations of standing is intercepted by Hadley's failure to meet the constitutional requirements. We note, however, that the bankruptcy trustee also does not satisfy these considerations; particularly, as we shall discuss subsequently, the bankruptcy trustee has asserted injury outside the applicable statutory zone of interests.

2. Standing as to the Bankruptcy Trustee's Pursuing the Claims of GIC Customer Creditors

Although the bankruptcy trustee Hadley has based his standing to pursue the claims of GIC customer creditors on several provisions of the bankruptcy statutes, we find that these provisions dictate a contrary conclusion. In enumerating the duties of the bankruptcy trustee, section 704 of the Bankruptcy Code requires the trustee to "collect and reduce to money the *property of the estate* for which such trustee serves." 11 U.S.C. § 704(1) (1982) (emphasis added). Section 541 defines property of the estate as "all legal or equitable interests *of the debtor* in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The bankruptcy trustee has conceded that this case concerns only those fully paid GIC customer securities sold in July and September, 1985, by Hutton pursuant to its margin agreement with GIC. Furthermore, no certificates have been submitted evidencing GIC's ownership of the subject securities. Hadley, therefore, has failed to show any possessory interest whatsoever in these securities by GIC when this lawsuit was filed.

We recognize that there has been divergence among the circuits concerning the ability of a bankruptcy trustee to bring actions against third parties on behalf of creditors of the bankrupt. *See, e.g., St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir.1989); *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988); *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir.1988); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222 (8th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987); *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983). On the facts of this case, however, we approve the reasoning of the Ninth Circuit in *Williams*, an analogous case factually and procedurally, and the Eighth Circuit in *Ozark Equip. Co.*, where those respective circuit courts determined that the bankruptcy trustee does not have standing to assert claims of creditors of the bankrupt. We emphasize that our holding is restricted to the specific facts in this case.

In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court held that a reorganization trustee, acting under Chapter X of the former Bankruptcy Act, had no standing to assert claims of misconduct against a third party, the trustee for the debenture holders under the indenture agreement, on behalf of the holders of the debtor's debentures. The Court explained that "Congress has not yet indicated even a scintilla of an intention" to confer such standing on trustees, "and that such a policy decision must be left to Congress and not to the judiciary." *Caplin*, 406 U.S. at 434, 92 S.Ct. at 1688. In rewriting the bankruptcy laws in 1978, Congress considered and rejected a provision that expressly would have overruled *Caplin*. *Williams*, 859 F.2d at 666; *see Ozark Equip. Co.*, 816 F.2d at 1227–28 & nn. 9–10. Therefore, *Caplin* has been held to remain the law under the revised bankruptcy statutes. *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1228; *Koch Refining*, 831 F.2d at 1347–48 n. 11.

The Court in *Caplin* identified three factors militating against standing of a bankruptcy trustee to assert the claims of the debtor's creditors. First, the Court found no provision in the bankruptcy statutes that the trustee is "to assume the responsibility of suing third parties on behalf of debenture holders" or that he is "to collect money not owed to the estate." *Caplin*, 406 U.S. at 428, 92 S.Ct. at 1685; *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1227. Analogizing its case under the revised bankruptcy laws with that of the *Caplin* trustee, who was attempting to collect funds not owed the estate under the former bankruptcy statutes, the Eighth Circuit stated: "[J]ust as there was nothing in the statutory reorganization scheme of the old Bankruptcy Act authorizing the trustee to collect money not owed to the estate, similarly, there is nothing in Section 544 or the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owed to the estate." *Ozark Equip. Co.*, 816 F.2d at 1228 (citation omitted); *see also Williams*, 859 F.2d at 666–67 (Even though the debtor's credi-

tors had assigned their claims to the bankruptcy trustee, the Ninth Circuit found them to be the real parties in interest and that they had assigned their claims only for the purposes of bringing suit.). Second, the Court observed that the bankrupt corporation had no claim against the indenture trustee, and at most, the trustee's claims of misconduct arose from a situation where the debtor and the indenture trustee were *in pari delicto*. *Caplin*, 406 U.S. at 430, 92 S.Ct. at 1686; *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1227. The Court envisioned no advantage in according the trustee standing to sue, since the indenture trustee apparently would be subrogated to the claims of the creditors. *Caplin*, 406 U.S. at 430, 92 S.Ct. at 1686; *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1227. Third, the Court noted that the trustee's suit on behalf of the debenture holders "may be inconsistent with any independent actions that they might bring themselves." *Caplin*, 406 U.S. at 431–32, 92 S.Ct. at 1687; *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1227. Based upon its concerns that the trustee's action would not preempt suits by individual creditors, that the trustee and the creditors might not agree on the amount of damages or on the theory of the suit, and that any settlement obtained by the trustee might not bind all parties, the Court concluded that "there is no showing whatever that by giving petitioner standing to sue on behalf of the debenture holders we would reduce litigation." *Caplin*, 406 U.S. at 431–34, 92 S.Ct. at 1687–88; *Williams*, 859 F.2d at 666; *Ozark Equip. Co.*, 816 F.2d at 1227.

We conclude that the *Caplin* concerns are valid in this case. The bankruptcy trustee Hadley admittedly is asserting claims of a specific group of GIC customer creditors, who have paid in full for securities purchased by GIC through its margin account with Hutton, which securities subsequently were sold by Hutton pursuant to its margin agreement with GIC. *See Koch Refining*, 831 F.2d at 1347–48 n. 11 (Although the Seventh Circuit has not precluded a bankruptcy trustee from asserting

claims of creditors of the bankrupt, it has distinguished between general and specific creditor causes of action by stating that the failure of Congress to enact the bill overruling *Caplin* "does not affect a trustee's right to bring a general action on behalf of all creditors rather than a personal one on behalf of only some."). Without proof of ownership, Hutton's listing the subject securities in GIC's name in its account records is irrelevant. *See T & B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1376 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 139, 107 L.Ed.2d 98 (1989). Moreover, ownership of these securities for which GIC customers had paid was transferred when Hutton sold the securities in July and September, 1985. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 210–11, 103 S.Ct. 2309, 2316–17, 76 L.Ed.2d 515 (1983); *Sly v. United States,* 836 F.2d 1310, 1312 (11th Cir.1988) (In a tax lien situation, ownership of property is not transferred from the debtor pursuant to levy and seizure prior to filing bankruptcy, but only when the property is sold to a bona fide purchaser at a tax sale.). Therefore, these causes of action and any potential recovery belong to the GIC customer creditors and not to the bankrupt GIC, represented by the bankruptcy trustee.

As in *Caplin* and *Williams,* the facts of this case reveal a situation of *in pari delicto* between the debtor GIC and Hutton. GIC has no claim for itself against Hutton. The claims asserted are those of GIC customer creditors. The potential exists that Hutton could be subrogated to the position of the customer creditors against GIC.

Based upon the representation of counsel at oral argument, the *Caplin* concern for duplicative litigation already has occurred, with aspects of this litigation currently pending in three separate courts. Additional lawsuits by the individual GIC customer creditors, to whom the claims belong, are possible. The facts of this case do not present us with any reason to differ from the conclusion of the *Caplin, Williams* and *Ozark Equip. Co.* courts that the bankruptcy trustee does not have standing to assert these specific claims of these creditors of the bankrupt.

### 3. Conclusion

In response to Hutton's summary judgment motion on the issue of standing, the bankruptcy trustee Hadley was required to set forth a genuine issue of material fact in order to prevent summary judgment under Federal Rule of Civil Procedure 56(e). Instead, Hadley has conceded that the only claims that he is pursuing in this action are those of a particular segment of customers of the bankrupt GIC.[2] Under these peculiar facts, there simply is no basis for standing. The district court should have dismissed the case.

 Accordingly, we VACATE the district court's denial of summary judgment to Hutton and REMAND with instructions to dismiss this case for lack of standing of the bankruptcy trustee to pursue these claims of these customer creditors of the bankrupt GIC.[3]

---

**2.** Such a concession is in full accord with the duties of both the trustee and his counsel, and is appreciated by this court.

**3.** Normally, orders denying motions for summary judgment are not appealable. In contrast, this appeal arises, from a question certified under 28 U.S.C. § 1292(b) and not from final orders pursuant to 28 U.S.C. § 1291 or § 1293. *See T & B Scottdale Contractors, Inc. v. United States,* 815 F.2d 1425, 1427 n. 7 (11th Cir.1987).

We have explained herein that questions of standing generally are handled by a motion to dismiss. In this case, however, the district court allowed the parties full discovery, and the question of standing came to us through denial of a motion for summary judgment and § 1292(b) certification. No harm has resulted because the parties well developed the relevant issues as to the standing question. We, therefore, remand only for the district court to dismiss this case for lack of standing.