James S. FELTMAN, not individually but as Trustee for First Financial Planning Corporation of South Florida, Inc., and Financial & Investment Planning, Inc., and The Official Unsecured Creditors Committee of First Financial Planning Corporation of South Florida, Inc., and Financial & Investment Planning, Inc., Plaintiffs,

v.

PRUDENTIAL BACHE SECURITIES, a Delaware corporation, Commercebank, N.A., a National Banking Institution, Thaw, Gopman & Associates, P.A., a Florida Professional Association, Donald Lockshin, an individual, Augusto Sigaretta, an individual, Ronald Thaw, an individual, Henry Gherman, an individual, and John Doe Nos. 1–10, Defendants.

No. 89–2505–CIV–NESBITT.

United States District Court, S.D. Florida.

Dec. 6, 1990.

■■■■■■

Ross B. Bricker, Miami, Fla., Robert A. Schatzman, Miami, Fla., for Official Unsecured Creditors Committee.

Stephen B. Gillman, Miami, Fla., for Commercebank and Augusto Sigaretta.

Jeffrey A. Blaker, Miami, Fla., for Thaw, Gopman & Associates.

Henry Gherman, pro se.

John D. Boykin, West Palm Beach, Fla., for Prudential Bache Securities and Donald Lockshin.

## ORDER OF DISMISSAL

NESBITT, District Judge.

### FACTS

In this action, the Chapter 11 trustee ("Trustee") and the unsecured creditors committee ("Committee") of two bankrupt, sham corporations, First Financial Planning Corporation of South Florida, Inc. ("FFP") and Financial & Investment Planning Inc. ("FIP"), sue Henry Gherman, the principal officer of the corporations and an incarcerated embezzler,[1] who defrauded investors out of at least $9.7 million. The bankruptcy court has rendered a judgment against Henry Gherman and his family in

---

**1.** Henry Gherman is currently incarcerated at the Metropolitan Correctional Center in Dade County, Florida. He was sentenced to a thirty-year prison term in the criminal case filed against him, *United States v. Gherman*, 89–50–CR–Marcus.

this amount. Gherman, however, is now penniless. He proceeds in this lawsuit *in forma pauperis*, and the Trustee believes that Gherman and his family will be unable to satisfy the judgment against them. Therefore, the Trustee and Committee also have brought this action against the solvent brokers, bankers, and accountants that allegedly furthered the fraud.

The complaint contains 13 counts. The first five state claims against all defendants for violating § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), aiding and abetting a violation of § 1962(c) of RICO, participating in a RICO conspiracy in violation of § 1962(d), aiding and abetting civil theft, and unjust enrichment. Counts VI, VII, and VIII state claims against Defendant Prudential–Bache Securities (and against Defendant Lockshin, one of its officers), Gherman's broker, for negligence, breach of fiduciary duty, and participation in breach of fiduciary duty. Counts IX and X state claims against Defendant CommerceBank, N.A., (and against Defendant Sigaretta, a bank officer), Gherman's banker, for negligence and participation in breach of fiduciary duty. Counts XI, XII, and XIII state claims against Thaw, Gopman & Associates, P.A., (and against Defendant Thaw, a member of the firm), Gherman's accountant, for professional negligence, breach of contract, and participation in breach of fiduciary duty.

In each of these counts, Plaintiffs assert claims on behalf of the creditors of the estate. The complaint, however, is vague regarding which claims belong to the defrauded investors and which, if any, belong to the bankrupt corporations.

The complaint alleges that in 1970, Gherman incorporated FIP, a sham corporation, and served as its president and principal officer. All of the other officers and directors, except one, were members of Gherman's family. Although ostensibly designed to provide financial services to its clients, FIP was in fact "formed in 1970 to hinder, delay and defraud creditors." Complaint at paragraph 24. Gherman later incorporated FFP, another sham corporation,

"to transfer and conceal stolen money." Complaint at paragraph 25. These corporations were individually or collectively insolvent from 1981 to 1988.

As part of his embezzlement scheme, Gherman established bank accounts at Defendant CommerceBank for FIP and its clients. Parallel brokerage accounts were set up at Defendant Prudential–Bache. Gherman periodically instructed Defendant Lockshin, an officer of Prudential–Bache, to withdraw funds from the brokerage accounts in the form of checks payable to the account holder. Gherman would pick up the checks, endorse them, and deposit them in the client's checking account at CommerceBank. The money was then immediately transferred from the client accounts to FIP's corporate account. Defendants CommerceBank and Sigaretta facilitated these transfers by adopting a "no-hold" policy on funds deposited in client accounts.

Gherman successfully camouflaged his illegal activities, and used the money in the FIP checking account to buy homes, automobiles, and other expensive items, as well as to funnel cash directly to his family. When it became apparent that his scheme would soon collapse, Gherman began to prepare to leave the country. Thus, in the summer of 1988, Gherman directed Defendant Lockshin to liquidate all assets held for FIP's clients and to change the mailing address for Gherman's personal accounts from FIP's corporate address to his residential address. Gherman then deposited the money into accounts at CommerceBank, and notified the bank that he personally would be withdrawing large sums from the bank. Gherman specifically requested that the withdrawals remain secret. Again Gherman had his mailing address changed from FIP to his home. Neither Lockshin nor Sigaretta questioned any of Gherman's activities.

Gherman set up a dummy corporation in Antigua to receive the money. He also retired certain personal and familial debts, and took other steps to ensure his family's financial well-being. In August 1988, Gherman fled the country. He wrote an apologetic letter to his clients explaining

his disappearance. Less than three months later, however, Gherman was arrested by Japanese authorities, and was extradited to the United States.

Plaintiffs now allege that Commerce-Bank and Sigaretta were aware of the suspicious withdrawals and deposits, that they accepted forged endorsements, that they permitted Gherman and his employees access to accounts for which they had no signature authority, and that they sent account statements to FIP rather than to the clients themselves, all of which furthered Gherman's embezzlement scheme. Plaintiffs allege that Prudential–Bache and Lockshin knew of the suspicious circumstances surrounding the withdrawal of funds from the brokerage accounts and that they also mailed the account statements to FIP. Finally, Plaintiffs allege that Thaw, Gopman & Associates ("Thaw, Gopman") and Thaw learned both that FIP was insolvent as early as 1982 and that FIP was not investing funds in certificates of deposits as claimed. In addition, Plaintiffs allege that Thaw, Gopman prepared fraudulent and misleading tax returns for FIP for fiscal years 1983–1987.

All of the Defendants, except Henry Gherman, have moved to dismiss the complaint. Defendants move to dismiss on the grounds that 1) the Trustee lacks standing to bring this action; and 2) the Committee lacks standing to bring an action that the Trustee is unable to bring. Defendants raise additional grounds for dismissal with respect to the individual causes of action; the Court finds, however, that it need not address these arguments and discusses below only the standing arguments.

## DISCUSSION

The Court has subject matter jurisdiction over this action 1) pursuant to 28 U.S.C. § 1331 because the complaint raises a federal question in counts I–III, and 2) pursuant to 28 U.S.C. § 1334(b), which gives the

district courts original, although not exclusive, jurisdiction over all civil proceedings related to cases arising under the bankruptcy code. This action clearly is related to a suit arising under the bankruptcy code: the Trustee seeks to recover funds for the bankrupts' estate and distribution to all the creditors. *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990) (related action is one which could affect the debtor's rights or liabilities).

 Defendants argue that both the Trustee and the Committee lack standing to bring this action. Standing is jurisdictional in nature, and thus whether plaintiffs have standing is always a threshold inquiry. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir.1990); *Federal Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1387 (11th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989). The Court must consider both constitutional standing requirements and prudential concerns in determining whether Plaintiffs have standing. *Hadley*, 901 F.2d at 984.[2] Furthermore, the Court must accept as true all of the allegations in the complaint and disregard the litigant's likelihood of success on the merits. *Id.* The Court views the allegations of the complaint in the light most favorable to the plaintiff. *Pennell v. San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).

### A. The Trustee's Standing

A bankruptcy trustee's dual role as representative of the debtor and of the creditors of the estate clearly gives rise to two possible grounds for asserting that he or she has standing to raise claims against third parties. The trustee's role with respect to the creditors' claims must be analyzed more precisely, however; the trustee may be asserting the right to bring claims either on behalf of all of the creditors or for specific creditors. The grounds upon

---

**2.** First among the constitutional requirements is that plaintiffs must have suffered actual injury. *Hadley*, 901 F.2d at 984. The Constitution also requires that the injury is traceable to the unlawful conduct, and the requested relief must redress the injury. *Id.* The prudential concerns include "(1) assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." *Id.* at 985.

which Plaintiffs base their standing argument are somewhat opaque, and therefore, the Court addresses each of the three possibilities below.

Defendants contest the Trustee's standing to bring this suit because the bulk of the complaint concerns Henry Gherman's theft from investor clients, now creditors of the estate, and the role the brokers, bankers, and accountants played in that fraud. Defendants contend that the Trustee cannot bring these claims against Defendants based on their role in the fraud, as these claims are not the Trustee's to bring, but are personal to specific creditors of the estate. Defendants' argument clearly has merit.

### 1. Trustee As Representative of Specific Creditors

In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court considered whether a bankruptcy trustee had standing to bring suit on behalf of debenture holders, which were creditors of the estate, against a third party, namely, the indenture trustee. The Court identified three problems with allowing the trustee to bring suit on behalf of the debenture creditors. *Id.* 92 S.Ct. at 1685. First, the Court noted that the bankruptcy code only authorized the trustee to bring causes of action available to the estate. *Id.* Second, the Court found that the bankrupt and the defendant in *Caplin* were *in pari delicto* with respect to the creditors' claims, and thus the defendant might be entitled to subrogation of its claims for the claims of the debenture creditors if the trustee were to recover. *Id.* 92 S.Ct. at 1686. Third, the Court pointed out that allowing the trustee to sue on behalf of the debenture holders would complicate litigation: a suit by the trustee might be inconsistent with independent actions brought by the creditors themselves, and it would be unclear which creditors would be bound by a judgment. *Id.* 92 S.Ct. at 1687. The Court therefore concluded that the trustee lacked standing to sue on behalf of a specific group of creditors of the estate.

The concerns enunciated in *Caplin* have not lost their vitality. In 1978, when Congress rewrote the bankruptcy code, it expressly rejected a provision which would have overruled *Caplin*. *See Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir.1988); *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1227 (8th Cir.1987), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). Moreover, the United States Court of Appeals for the Eleventh Circuit recently addressed a trustee's standing to bring claims on behalf of specific creditors in *E.F. Hutton & Co., Inc. v. Hadley, supra.* The court held that a bankruptcy trustee did not have standing to raise the claims of specific creditors of the debtor, stating that "[w]e conclude that the *Caplin* concerns are valid in this case." 901 F.2d at 986. Thus the Court finds that the established law bars the Trustee from raising these claims based upon the specific creditors' interests.

### 2. Trustee As Representative of The Creditors Generally

Plaintiffs argue that they fall outside the strictures of *Caplin* in that they seek, at least in part, redress for injuries to FFP and FIP that derivatively impact *all* creditors rather than specific creditors. Plaintiffs point to the allegations of paragraphs 59 and 92, which state that Gherman was systematically stealing from FIP and that FIP was injured by Defendants because its business life was prolonged past the point of insolvency. Furthermore, Plaintiffs argue that the Committee has standing to recover for those direct injuries to specific creditors alleged in the complaint. Plaintiffs cite numerous cases to support their position that *Caplin* is inapplicable to this case. Although Plaintiffs make a colorable argument for recognizing an exception to *Caplin*, it fails for several reasons to convince the Court that the Trustee has standing. Most significantly, the "alter-ego" exception raised by Plaintiffs is inapposite upon the facts of their case.

Plaintiffs correctly point out that although not universal, a significant number of circuits permit bankruptcy trustees

to bring alter ego actions against the debtor's principals. *See St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.,* 884 F.2d 688 (2nd Cir.1989); *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132 (4th Cir.1988); *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *In re S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir.1987). Even these cases, however, are not necessarily consistent regarding the scope of the trustee's powers. Some cases, such as *Steyr–Daimler* and *S.I. Acquisition,* simply hold that because the trustee stands in the shoes of the debtor, the bankruptcy trustee can bring an alter ego action when the debtor can pierce its own veil under relevant state law. These cases are unremarkable. They merely affirm a fundamental principle of bankruptcy law: as set forth in *Caplin,* the trustee in bankruptcy can bring actions on behalf of the estate, actions that would otherwise be available to the debtor outside bankruptcy.[3] *See also Steyr–Daimler,* 852 F.2d at 135. Thus, the trustee's ability to bring suit turns on the debtor's rights under non-bankruptcy law.[4] *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Koch,* 831 F.2d at 1343; *In re Livingston,* 804 F.2d 1219 (11th Cir. 1986).

Other cases, such as *St. Paul* and *Koch Refining,* create an exception to *Caplin:* the trustee has standing to bring claims that belong to the creditors generally, that is, claims that *any* creditor could bring. Nevertheless, whether a cause of action belongs to the creditors generally is still a question of state law. *See Koch Refining,* 831 F.2d at 1345 ("In each state, the alter ego theory is an equitable, remedial doctrine that may be asserted by any creditor without regard to the specific nature of his relationship with the corporation and its alleged alter ego.")

At least one court has rejected the notion that the trustee has standing to raise general claims on behalf of the creditors. In *Ozark Equipment Co.,* the United States Court of Appeals for the Eighth Circuit held that the trustee lacked standing to bring an alter ego action, because under Arkansas law, an alter ego action is for the benefit of third parties, and therefore, a corporation cannot pierce its own veil. 816 F.2d at 1225.[5]

Thus, after carefully reviewing all of the relevant case law, the Court concludes that, at best, Plaintiffs have demonstrated that in some circuits, the bankruptcy trustee has standing to recover on behalf of the creditors when state law gives the creditors generally a legal right of action. What Plaintiffs utterly fail to explain, however, is the relevance of this proposition to the facts of their case. Plaintiffs do not argue that, outside of bankruptcy, the creditors generally would be able to bring these claims under the laws of the State of Florida or federal law. Rather, Plaintiffs merely contend that in addition to injuring a specific group of creditors (the victims of Gherman's fraud), Defendants directly injured the debtor corporations—thus deriva-

---

**3.** Section 541 of the Bankruptcy Code provides that the "estate is comprised of all the following property ... all legal or equitable interests of the debtor in property as of the commencement of the case."

**4.** Under most circumstances, state law will determine whether the debtor would otherwise have a cause of action. When federal law gives rise to a cause of action, however, non-bankruptcy federal law rather than state law will control what actions are property of the estate.

**5.** The Court of Appeals for the Ninth Circuit also has held that a bankruptcy trustee lacks standing to bring specific creditors' claims. In *Williams v. California 1st Bank,* 859 F.2d 664 (9th Cir.1988), the court held that a trustee did not have standing to bring an action against those entities which allegedly participated in the debtor's Ponzi scheme on behalf of certain creditors that assigned their claims to the trustee. In denying the trustee standing, the Ninth Circuit reiterated the three concerns raised in *Caplin*: the limitations of the bankruptcy code, the possibility of subrogation, and the potential for inconsistent actions by those creditors that did not assign their claims. The claims the trustee sought to assert in *Williams,* however, do not appear to have been claims for the creditors generally but rather claims available only to a specific group of creditors.

tively injuring all the creditors.[6]

Unfortunately, this argument only begs the question. Even if the Court were to agree that a trustee would have standing to bring general claims on behalf of all the creditors, alleging a derivative injury fundamentally differs from asserting that the creditors have cognizable claims against Defendants under federal RICO law or Florida law. Although every injury to a debtor corporation derivatively injures the creditors, obviously not every derivative injury will give the creditors generally the right to sue. In short, the allegations that creditors have been injured derivatively is a red herring. The cases cited by Plaintiffs are irrelevant to the extent that Plaintiffs fail to show, or even to argue, that their claims would belong to the creditors generally outside bankruptcy.

Moreover, although the precise scope of the holding in *Hadley* is less than certain,[7] the Eleventh Circuit appears to have rejected the view that the trustee has standing to bring claims that would otherwise belong to all the creditors. The court stated that

> We recognize that there has been a divergence among the circuits as to the ability of a bankruptcy trustee to bring actions against third parties on behalf of creditors of the bankrupt. On the facts of this case, however, we approve the reasoning of the Ninth Circuit in *Williams*, an analogous case factually and procedurally, and the Eighth Circuit in *Ozark Equip. Co.*, where those respective circuit courts determined that the bankruptcy trustee did not have standing to assert claims of creditors of the bankrupt.

*Hadley*, 901 F.2d at 985 (citations omitted). Thus, the Court finds that the Trustee lacks standing to bring this suit on behalf of the creditors of the bankrupt corporations.

### 3. Trustee As Representative of Debtor Corporations

Even to the extent that the Court interprets the complaint as asserting claims otherwise available to the debtor corporations, the Trustee's standing is still open to question in this particular case. Plaintiffs have alleged that Defendants injured FIP: Gherman was systematically stealing from FIP and Defendants aided in artificially extending FIP's life. Yet, Plaintiffs also unambiguously state that the debtors were only sham corporations, created for the sole purpose of defrauding creditors.

The Court agrees with Plaintiffs that an "artificial and fraudulently prolonged life ... and ... consequent dissipation of assets" constitutes a recognized injury for which a corporation can sue under certain conditions. *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.1983), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). The Court finds, however, that under the circumstances alleged in the complaint, the corporations were not injured by their prolonged life.

All corporations are legal fictions. In this case, however, FIP and FFP were simply fictitious. The complaint alleges that FIP and FFP were sham corporations, alter egos with no corporate identity separate from Henry Gherman.[8] As the corporations were essentially only conduits for stolen money, any injury to the debtors in this case must be substantially coterminous with the injury to the defrauded creditors.

---

**6.** Throughout their papers, the Plaintiffs distinguish between claims for derivative injuries to the creditors, which they allege the Trustee has standing to raise, and claims for direct injuries to the creditors, which the Committee allegedly has standing to bring. The direct injuries are clearly personal to specific creditors of the estate, the investors.

**7.** In *Hadley* the trustee admitted that he was bringing claims for specific creditors, not the corporation. Further, the court stated, "We emphasize that our holding is restricted to the specific facts of this case." 901 F.2d at 985.

**8.** The bankruptcy court held that each company was an alter ego of Gherman, reasoning that "[u]nder Florida law, the separate identity of a corporation will be disregarded on proof that it is a 'mere instrumentality' of, that is to say, it is completely dominated by, another corporation or individual, and that it is a device or sham to mislead creditors or exists for some other fraudulent purpose. *Bendiz Home Systems, Inc. v. Hurston Enterprises, Inc.*, 566 F.2d 1039 (5th Cir.1978)." *Feltman v. Gherman*, 103 B.R. 326, 330 (Bankr.S.D.Fla.1989).

Everything Gherman stole from the debtor corporations, the debtors had stolen from the creditors. Thus, any alleged injury to the debtors is as illusory as was their corporate identity.[9]

Plaintiffs contend that the debtors' sham status should be ignored because the "alter ego doctrine is an equitable remedy which may be invoked for some purposes and not others," and that the trustee for a debtor corporation does not always step into the shoes of the wrongdoer.[10] *In re Western World Funding, Inc.,* 52 B.R. 743, 772 (Bankr.D.Nev.1985). In this case, however, equity does not require allowing the Trustee to recover on behalf of the corporations.

▬▬▬ The complaint alleges that FIP and FFP, with assistance from the Defendants, defrauded investors out of huge sums of money. Clearly, the defrauded creditors would have claims against Prudential–Bache, CommerceBank, or Thaw, Gopman for their role in the fraud against them.[11] To allow the Trustee to sue on behalf of the corporation for the same damages suffered by a specific class of creditors would deprive those creditors of standing to raise those claims. *See Barnett v. Stern,* 93 B.R. 962, 969 (N.D.Ill.1988) (in bankruptcy, when the trustee has standing to bring a claim, the creditors do not),[12] *rev'd on other grounds,* 909 F.2d 973 (7th Cir.1990); *cf. Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2nd Cir. 1988) (when a creditor and bankrupt share claims arising from same transaction, both have standing but creditor must await disposition of trustee's claim before bringing action), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Further, if the Trustee recovered on behalf of the debtors, then the proceeds of the suit would be distributed to all creditors in accordance with the Joint Amended Plan of Reorganization ("the Plan"). Exhibit A, Appendix to Response to Motions to Dismiss.

The descriptions of the various classes of creditors in the Plan are not sufficiently detailed for this Court to determine precisely how any recovery against the Defendants would be distributed. A distribution among all the creditors, however, clearly raises the possibility that the defrauded creditors would be treated inequitably. Under the Plan, other creditors, such as trade creditors, might receive some of the

---

9. The debtors' status as sham corporations created to steal from their customers also would bar them from suing on other grounds. FIP was clearly "an engine of theft," unentitled to recovery from its cohorts. *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir. 1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). Although Florida has not explicitly adopted the *Cenco* "engine of theft" theory, *see Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1559 (S.D.Fla.1990) (the court rejected *Cenco* as inapplicable, stating that "[e]ven assuming [the defendant] had factual support for its 'engine of theft' theory, it would fail as legally insufficient in this case."), it is wholly consistent with existing law. *See, e.g., Whitelock v. Geiger,* 368 So.2d 372, 374 (3rd DCA 1979) ("when both parties are in pari delicto, the court will leave them to settle their disputes without aid of court."). *Cenco* simply illustrates one circumstance in which an agent's acts will be imputed to the corporation and equity will bar the corporation from suing the accessories to the fraud. Given the facts alleged in the complaint, it is beyond dispute that, outside bankruptcy, FIP and FFP, which defrauded investors out of millions of dollars, would lack standing to bring this action.

10. Plaintiffs argue that Feltman could not have recovered from Gherman and his family in *Feltman v. Gherman,* 103 B.R. 326 (Bankr.S.D.Fla. 1989), if the Trustee stepped into the shoes of the wrongdoer. *Feltman v. Gherman,* however, had nothing to do with a trustee's standing to bring certain actions against third parties outside of bankruptcy. Rather, *Feltman* merely concerned an interpretation of certain statutory provisions of the bankruptcy code: whether the debtors were entitled to a discharge in bankruptcy and whether the Trustee could avoid certain fraudulent transfers under 11 U.S.C. § 548(a). Standing was never at issue.

11. Defendants have moved for the Court to take judicial notice of a complaint filed by a member of the Committee and other creditors against Thaw, Gopman for professional negligence, breach of contract, and unjust enrichment in state court. The Court grants the motion, and notes that two of these claims duplicate claims raised in this suit.

12. The creditors only regain their standing to sue if the trustee abandons the claim. *St. Paul,* 884 F.2d at 700. This approach is designed to eliminate the possibility of inconsistent judgments. *Id.*

monies which should in fact recompense the victims of the fraud. To use the debtor corporations as a means of distributing monies recovered from Defendants would be to perpetuate the debtors' role as a vehicle for the principal's fraud, possibly preventing the victims of the fraud from fully recovering their losses.[13] Under these circumstances, the individual creditors rather than the Trustee should seek recovery from third parties.[14]

At least one court has recognized explicitly that a trustee does not gain standing to bring claims belonging to specific creditors merely because the complaint alleges an injury to the debtor corporation. In *In re D.H. Overmyer Telecasting Co.*, 56 B.R. 657 (Bankr.N.D.Ohio 1986), the court stated, "Examination of count III reveals that this claim belongs to unsecured creditors ... not [the debtor].... [The debtor] claims that somehow it suffered injury...." *Id.* 56 B.R. at 659. The court continued, reasoning that "[a]llegations that [defendant] knowingly breached a duty to [creditors] and to the debtor, by aiding a debtor corporation's fraudulent transfers, are insufficient to give a bankruptcy trustee standing to sue on behalf of the allegedly defrauded creditors." *Id.* Relying on *Caplin* and *Rochelle v. Marine Midland Grace Trust Company*, 535 F.2d 523 (9th Cir.1976), the court decided that "allegations of misconduct and damage to the debtor corporation are insufficient to give the trustee standing to sue third parties on behalf of creditors." *Id.* 56 B.R. at 660.

In summary, the Court finds that the Trustee does not have standing to bring this claim because 1) the case law unani-

mously holds that a trustee cannot raise claims on behalf of specific creditors; 2) even if the Court were to accept the controversial proposition that a trustee could bring claims on behalf of the general creditors, the Trustee has failed to allege a claim available to the creditors generally; and 3) any damage to the debtor corporations is wholly illusory in this case as the corporations were mere alter egos of Henry Gherman, and recovery by the Trustee on behalf of the debtors would be inequitable.

**B. The Committee's Standing**

■ Plaintiffs contend that the Committee has standing to assert claims on behalf of the specific creditors of the estate that have been directly injured by Defendants. Plaintiffs, however, cite no authority for their position that a creditors' committee can bring claims that the trustee would be unable to raise.

■ It is undisputed that a creditors' committee has standing to intervene or act as co-plaintiff in an action by the trustee. Moreover, "[t]he law is well-settled that in some circumstances, a creditors' committee has standing ... to file suit on behalf of a debtor-in-possession or a trustee." *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir.1988) (citations omitted). A committee, however, can only file suit when the trustee and debtor-in-possession unjustifiably fail to bring the action. *Id.; In re STN Enterprises*, 779 F.2d 901, 904 (2nd Cir.1985).

■ In this case, the debtors and Trustee clearly have not failed to bring suit. Moreover, the law is unequivocal regarding the limits of the Committee's ability to

---

**13.** There is another way looking at the problem posed by the Trustee's suit. In *Hadley*, the trustee sued for injuries to creditors caused by the debtor and its broker, E.F. Hutton. 901 F.2d at 985. The Eleventh Circuit held that the trustee did not have standing because recovery by the trustee would not redress the injury to the creditors. *Id.* The Court agrees with Defendants that this action is essentially identical to *Hadley* on the facts (the primary difference being that the trustee in *Hadley* did not attempt to assert that the debtor corporation was injured), and recovery in this case would not redress the injury to the specific creditors. The Trustee is

simply attempting to circumvent the standing requirements by alleging that the debtor has been injured.

**14.** As stated by the Supreme Court in *Caplin*, a class action is probably the appropriate vehicle for pursuing claims against Defendants: "Rule 23 of the Federal Rules of Civil Procedure, which provides for class actions, avoids some of these difficulties. It is surely a powerful remedy and one that is available to all debenture holders." 92 S.Ct. at 1688.

bring suit: the Committee can only bring actions initially available to the debtor or Trustee. Although Plaintiffs attempt to discourage the Court from a "formalistic" reading of the bankruptcy code that would prevent the Committee from suing, Plaintiffs cite no authority for their more liberal statutory construction.

In addition, the Court finds that the Joint Amended Plan of Reorganization fails to improve Plaintiffs' position. Paragraph 8.4 of the Plan provides, in relevant part, that "[t]he Committee shall be the exclusive and designated Class Representative for all action brought against third parties with respect to non-derivative claims which a court of competent jurisdiction finds that the matter should proceed as a class action." First, it is unclear to the Court whether the Committee is permitted to represent a specific group of creditors. *See In re Continental Airlines, Inc.*, 57 B.R. 839, 841 (Bankr.S.D.Tex.1985) (to allow committee to act as class representative would place committee "in the untenable position of a clear conflict of interest between one individual creditor/employee and another"). Second, no motion for the appointment of a class is before the Court. Therefore, the Court finds that the Plan does not give the Committee standing to bring this action in its current form.[15]

### Conclusion

For the reasons stated above, the Court finds that neither the Trustee nor the Committee has standing to raise the claims stated in the complaint. These claims belong to specific creditors of the estate— those investors Gherman defrauded. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendants' motions to dismiss are GRANTED and the complaint is DISMISSED for the reasons stated above. It is further

**15.** The Court notes that the improper mixing of claims of the debtors and individual creditors also renders the complaint subject to dismissal pursuant to Federal Rules of Civil Procedure

ORDERED AND ADJUDGED that all remaining pending motions are DISMISSED as moot.

DONE AND ORDERED.

8(e) and 9(b), even if the Trustee had standing to raise claims on behalf of the debtor. *In re Morgan–Staley Lumber Co.*, 70 B.R. 186 (Bankr. D.Or.1986).