In re Albert H. PIEPER, Debtor.

**FRESH WESTERN MARKETING, INC., Plaintiff,**

**v.**

**Albert H. PIEPER, Defendant.**

**Bankruptcy No. 89–7533–8P7.**
**Adv. No. 90–0007.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 24, 1990.

Richard McIver and Jonathan M. Deer, Tampa, Fla., for plaintiff.

M. Jay Lancer, Sarasota, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is the claim of non-dis-

chargeability asserted by Fresh Western Marketing, Inc. (Fresh Western). The claim of non-dischargeability is based on 11 U.S.C. § 523(a)(4) and the contention of Fresh Western that the obligation owed by Albert H. Pieper (Debtor) to Fresh Western represents a liability resulting from the defalcation by the Debtor while acting in a fiduciary capacity and, therefore, the liability should be excepted from the overall protection of the general bankruptcy discharge.

The evidence relevant to the claim of non-dischargeability as established at the final evidentiary hearing is basically without dispute and is as follows:

The Debtor, a man of high school education, owned and operated an automobile repair shop in a building owned by him in Sarasota, Florida. In 1987 the Debtor decided to commence a second business venture and formed a corporation, which was to engage in the business of dealing in agricultural products. The corporation was formed under the name of The Wholesale Farmer, Inc. (Wholesale Farmer), and had its business office in the same building in which the Debtor operated his automobile repair shop. It is without dispute that none of the corporate formalities were ever observed—no stock was ever issued, and while the Debtor was nominally the president and his wife the secretary, no board of directors ever functioned as such, no board resolutions were ever passed, no board meetings were ever held and, of course, no minutes of any board meetings were kept.

There is no direct evidence that Wholesale Farmer was in fact engaged as a dealer or broker of agricultural products, but there is no serious dispute that this was, in fact, the case and therefore it was subject to the provisions of the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. § 499a, etc. (PACA), commonly known as "PACA". It is equally clear, however, that individually, the Debtor never applied for or obtained a license to function and operate as a dealer, broker or commissioned merchant dealing in perishable agricultural commodities subject to the provisions of PACA.

The Debtor initially hired Vernon Hoetling as general manager and placed him in charge of the day-to-day operation and management of Wholesale Farmer. At all times relevant, the Debtor was advised by his counsel, John Griffis, and by his accountant, Roger Dubats, who was in charge of overseeing the record keeping of the operation of Wholesale Farmer.

Wholesale Farmer maintained two bank accounts, one for general operation and one for its payroll. Basically the Debtor was involved in the operation of the business only to the limited extent of signing payroll checks, although at times he signed other checks in instances when the general manager was not available. It should be noted that none of the checks were introduced into evidence.

It appears that by early March of 1988, Wholesale Farmer ran out of funds. At this time, Dubats informed the Debtor that at least $50,000 would be required to meet Wholesale Farmer's most pressing financial obligations. To obtain these funds, the Debtor individually borrowed $50,000 from the Wauchula State Bank and pledged as collateral his residence.

In June of 1988, Hoetling was replaced by Richard Pryor, who remained and functioned as general manager until August of 1988. Thereafter Wholesale Farmer did not have a general manager as such, but its affairs were basically conducted by someone named "Al". However, Al was never authorized to sign checks, and it is without dispute that after the departure of Pryor, all checks were prepared by the secretary of Dubats and then signed by the Debtor. There is nothing in this record to warrant the finding that the Debtor *ever* directed payment of specific obligations of the corporation or decided which of the outstanding bills should be paid. On the contrary, the record reveals that the Debtor merely trusted Dubats, the accountant, to make these decisions.

The evidence is uncontradicted that neither the Debtor, his wife, nor any of his relatives received compensation from the corporation, with the exception of rent payments for the business premises, which as

noted previously, were owned by the Debtor. There is no clear evidence on this point, but it appears that these rent payments were just enough to pay the mortgage obligation of the Debtor which encumbered the business premises. All rent payments ceased by the summer of 1988.

It appears that in the summer of 1988 the Debtor received a letter—which again was not put into evidence—from Fresh Western. The Debtor apparently gave the letter to his attorney, who in turn did not advise him as to the contents or advise him what action, if any, should be taken. The contents of the letter, not being in evidence, is, of course, unknown. Wholesale Farmer subsequently ceased operation in the fall of 1988.

Sometime in 1989 Fresh Western filed a suit in the United States District Court for the Middle District of Florida against Wholesale Farmer and the Debtor. (Case No. 88–1729–Civ–T–13B). On February 6, 1989 the District Court entered a consent judgment which determined, inter alia, that Fresh Western is a perfected trust creditor under PACA and that Fresh Western was entitled to a money judgment against Wholesale Farmer in the amount of $75,098.75. In addition, the District Court also entered a judgment in favor of Fresh Western against the Debtor and his wife, Monica Pieper, jointly and severally, in the amount of $30,000. It appears that the consent judgment provided that the effective date of the judgment was stayed for 180 days to give the Debtor and his wife an opportunity to collect the accounts receivable of Wholesale Farmer and pay all proceeds collected to satisfy the judgment.

On October 18, 1989 the Debtor filed his Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. His schedule of liabilities included Fresh Western, which filed its timely complaint and sought a determination that the obligation of the Debtor represented by the consent judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). The matter was scheduled for trial in due course at which time the foregoing facts were established.

At the conclusion of the final evidentiary hearing, counsel for the Debtor moved for an involuntary dismissal of Fresh Western's complaint on the basis that Fresh Western failed to establish with the requisite degree of proof the essential elements of a claim of non-dischargeability pursuant to 11 U.S.C. § 523(a)(4) which provides as follows:

§ 523. **Exceptions to discharge.**
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

The Court, having heard arguments of counsel and authorities cited in support of the Debtor's oral motion for involuntary dismissal announced that the oral Motion To Dismiss was well taken and the complaint should be dismissed with prejudice. The basis to grant the Debtor's oral Motion to Dismiss is based on the following:

Although there is a conflict among the various circuits regarding the appropriate standard of proof—either "clear and convincing" or "preponderance of the evidence"—to apply in actions alleging fraudulent conduct under 11 U.S.C. § 523, this Court is satisfied that in this Circuit, the proper standard is clear and convincing. In this connection, it should be noted that the United States Supreme Court has granted certiorari to resolve this dispute in *Grogen v. Garner*, 881 F.2d 579 (8th Cir. 1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990). Notwithstanding, this Court is satisfied that under either standard of proof, the Plaintiff has failed to carry the burden required by law.

■ To establish a claim of nondischargeability based on fraud or defalcation pursuant to 11 U.S.C. § 523(a)(4), a creditor must prove by clear and convincing evidence first that a fiduciary relationship existed between the parties and second that the Debtor is guilty of defalcation or fraud while acting in his fiduciary capacity. *See In re Hunter*, 780 F.2d 1577 (11th Cir.

1986). It is well established that the fiduciary duty contemplated by 11 U.S.C. § 523(a)(4) must be owed by the debtor to the creditor contesting dischargeability and must exist from the onset of the relationship between the debtor and creditor. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Cross*, 666 F.2d 873 (5th Cir.1982). It is equally true that in order to prevail under 11 U.S.C. § 523(a)(4), a creditor must prove not only a fiduciary duty, but also the existence of a wrongful act, i.e. defalcation or fraud, committed by the Debtor while acting in the fiduciary capacity.

In a corporate setting, absent insolvency of the corporation, a corporate officer generally does not owe a direct fiduciary duty to a creditor of the corporation. *In re Hays*, 31 B.R. 285 (Bankr.E.D.Tenn. 1983). A corporate officer's mismanagement of his corporation generally does not transform a corporate obligation into a personal liability owed by the officer to individual creditors of the corporation. *In re Cross, supra,* 666 F.2d at 880. However, where a corporate officer causes defalcation or fraud by the corporation, that officer may be personally liable, whether or not he personally profits from the defalcation or fraud, and in turn, that liability may be nondischargeable. *In re Koszuth*, 43 B.R. 104 (Bankr.M.D.Fla.1984); *In re Folliard*, 10 B.R. 875 (D.Md.1981). While the defalcation need not be intentional, *In re Gagliano*, 44 B.R. 259 (Bankr.N.D.Ill.1984), the wrongful conduct on the part of the corporate officer must at least be *knowing*. *In re Koszuth, supra*, 43 B.R. at 107.

Based on the facts developed in the case at hand, the evidence falls woefully short of establishing the existence of a fiduciary relationship between Fresh Western and the Debtor, nor does it establish defalcation by this Debtor, either individually or in his capacity as president of Wholesale Farmer. The record is devoid of any evidence to establish that the Debtor was ever a broker or dealer of agricultural products and subject to PACA. Even if the Debtor could be considered a broker or dealer vicariously because of his relationship with Wholesale Farmer, and thus had some duty to Fresh Western, there is no evidence to establish that the Debtor ever breached a duty of whatever kind. Nor is there any evidence to establish that the Debtor was responsible for or even involved in the day to day operations of Wholesale Farmer, including the decisions of how Wholesale Farmer paid its debts.

The Debtor cannot be held responsible for acts he did not commit or even know about, simply because on paper he was the president of Wholesale Farmer. Fresh Western's dealings were with Wholesale Farmer, a corporate entity, and Fresh Western has not attempted to pierce the corporate veil to establish a relationship, let alone a trust relationship, with the Debtor. Further, there is no evidence that the Debtor ever knew about a trust relationship or ever committed any wrongdoing as to Fresh Western.

In sum, while the Debtor created an appalling picture of how not to run a business, there is absolutely no evidence that the Debtor committed defalcation, even assuming the Debtor could be considered a fiduciary under PACA either individually or as the instrumental officer of Wholesale Farmer. Therefore, based on the foregoing, this Court finds that the oral Motion To Dismiss should be granted and the Complaint should be dismissed with prejudice.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's oral Motion for involuntary dismissal be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Complaint be, and the same is hereby, dismissed with prejudice, and the obligation represented by the consent judgment owed by the Debtor to Fresh Western be, and the same is hereby, determined to be dischargeable.