In re CARIBBEAN K LINE,
LTD., Debtor.

John R. Arwood, Appellant/Defendant,

v.

Marcia T. Dunn, Chapter 7 Trustee,
Appellee/Plaintiff.

No. 01–3510–CIV–GOLD.

United States District Court,
S.D. Florida.

Dec. 26, 2002.

Woodrow M. Melvin, Jr., Esq., Coconut Grove, FL, Scott Louis Baena, Esq., Bil-zin, Sumberg, Dunn, Baena, Price & Axelrod, Miami, FL, for Defendant.

Arthur R. Traynor, Jr., Esq., Akerman, Senterfitt & Eidson, Miami, FL, for Plaintiff.

### CORRECTED ORDER ON BANKRUPTCY APPEAL [1]

GOLD, District Judge.

THIS CAUSE is before the Court on appeal from the United States Bankruptcy Court, Southern District of Florida. Appellant/Defendant John R. Arwood ("Arwood") filed an Initial Brief (DE # 15) on October 31, 2001. Appellee/Plaintiff Marcia T. Dunn ("Dunn") filed a Response to the Appeal and an Initial Brief on Cross–Appeal (DE # 21) on January 7, 2002. Arwood then filed a Reply brief on the Appeal and Response on the Cross–Appeal (DE # 26) on March 4, 2002, and Dunn filed a Reply on the Cross–Appeal (DE # 29) on April 11, 2002. Oral argument was held before the Court on Friday, October 11, 2002. Following oral argument, Dunn submitted Supplemental Briefing (DE # 34) on November 8, 2002 at the Court's request.

The issues on Appeal and Cross–Appeal are as follows:

(1) Whether Dunn has standing to recover damages to the Debtor's estate resulting from a breach of a fiduciary duty owed to a third party creditor;

(2) Whether Arwood, as a director of the Debtor, can be liable for payments if he obtained no personal benefit;

(3) Whether the prejudgment interest award to Dunn was excessive; and

---

1. While this Corrected Order supersedes previous Orders, the Judgment of the Court remains unchanged.

(4) On Cross–Appeal by Dunn, whether it was error for the Bankruptcy Court to dismiss the statutory claim for civil theft at the pleading stage, thereby eliminating the statutory remedies of treble damages and attorneys' fees that might otherwise have been available to Dunn.

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a). The appeal arises from a final judgment entered against Arwood by Judge Mark of the United States Bankruptcy Court, Southern District of Florida, in the sum of $118,508.50.

Upon careful consideration of the parties' arguments during oral argument, the briefing papers and supporting materials submitted by the parties, and applicable case and statutory law, the Court holds the following: (i) the Court affirms the Bankruptcy Court's determination that Dunn has standing to pursue her claims; (ii) the Court affirms the Bankruptcy Court's determination that no showing of personal benefit is necessary to hold Arwood liable under Dunn's causes of action; (iii) regarding the Bankruptcy Court's award of prejudgment interest to Dunn, the Court remands the following issues to the Bankruptcy Court for clarification, and, as need be, determination: (i) whether federal or state law applies in determining the award of prejudgment interest to Dunn; (ii) the applicable rate of interest in the award of prejudgement interest to Dunn; and (iii) whether prejudgment interest begins to accrue from the payments to Fenchurch or from the date this proceeding was commenced; and (iv) regarding the question of whether it was error for the Bankruptcy Court to dismiss the statutory claim of civil theft at the pleading stage, the Court reverses the Bankruptcy Court's dismissal of the statutory civil theft claim and remands the claim to the Bankruptcy Court for consideration on the merits.

## I. STANDARD OF REVIEW

■ Review by federal district courts is plenary with respect to a bankruptcy court judge's conclusions of law. *In re James Cable Partners, L.P.*, 27 F.3d 534, 536 (11th Cir.1994); *In re the Matter of Hammons*, 614 F.2d 399 (5th Cir.1980).[2] Factual findings made by a bankruptcy judge must be affirmed unless they are clearly erroneous. Fed.R.Bank.P section 8013; *In the Matter of Garfinkle (Dooley v. Weil)*, 672 F.2d 1340, 1344 (11th Cir. 1982). The test is not whether this Court would have drawn a different conclusion from the evidence, but whether there is sufficient evidence in the record to support the bankruptcy court's findings. *Matter of Bardwell*, 610 F.2d 228, 230 (5th Cir.1980). If there is any ground in the record which supports the bankruptcy court's judgment, this Court must affirm. *In re Woosley*, 117 B.R. 524 (9th Cir. BAP 1990). Once the District Court finds one ground to support the bankruptcy judge's findings, it need not consider all the issues raised by the appellants and thus become "mired down in a legal bog." *In re Monetary Group*, 2 F.3d 1098, 1103 (11th Cir.1993). The burden to show clear error is on the party seeking reversal of the bankruptcy court's findings. *In re Bush*, 62 F.3d 1319, 1322 (11th Cir.1995).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Here, the parties do not dispute the Bankruptcy Court's findings of fact, as laid out below and noted by the Bankruptcy Court as stipulated facts in its bench rul-

**2.** All Fifth Circuit decisions prior to October 1, 1981 are binding precedent on the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

ing of March 12, 2001. The Bankruptcy Court entered a final judgment against Arwood in the amount of $90,000 as principal and $28,508.50 as prejudgment interest after a trial on January 17, 2001 and January 31, 2001. (Bankr./DE # 115). Dunn, as Chapter 7 Trustee, sought to hold Arwood, a director of the Debtor, liable for two payments made by the Debtor to Fenchurch, an insider, totaling $90,000 in May and June of 1997. Dunn was appointed as Trustee on August 14, 1997 and this proceeding began about two years later on July 22, 1999.

Caribbean K Line Limited ("K Line"), the Debtor, was formed or incorporated under the laws of the Turks and Caicos on December 4, 1994. (Bankr./DE # 109, 4). K Line carried ocean freight into and out of Port Everglades, Florida, and into and out of other ports in the Caribbean. By January of 1995, Arwood had orally accepted the position of "chairman" of the Debtor. (*Id.* at 5). Acting through its chairman, Debtor executed a promissory note for $15,000.00 in favor of Fenchurch Limited ("Fenchurch"), a Liberian corporation with offices in Grand Cayman (*Id.*). Again acting through its chairman, Debtor executed another promissory note for the sum of $100,000.00 in favor of Fenchurch. (*Id.*). A line account with Intercontinental Bank of Miami was opened in February, 1995 by the CKL Agency, of which Arwood was one of two authorized signatories, into which much of the revenue collected from the Debtor's ocean freight business was deposited. (*Id.* at 6). Arwood never received a salary, fringe benefits, reimbursement, or other compensation from either the CKL Agency or the Debtor, but rather expected that his investment in the CKL Agency would yield a dividend. (*Id.*).

By early 1997, Debtor was in significant financial trouble. On February 7, 1997, the president of Sea Containers America, Inc. ("Sea Containers") sent a notice of default to the CKL Agency referable to equipment leases between Sea Containers and the Debtor. (*Id.* at 8). On April 14, 1997, the general counsel for Sea Containers faxed another notice of default with respect to the Debtor's equipment leases. (*Id.*). It demanded the immediate return of all lessor's equipment and the immediate payment of all sums claimed to be owed it. (*Id.*). By May, 1997, some checks already cut to the Debtor's suppliers were held until there were sufficient funds in the line account to pay the suppliers. (*Id.* at 11). On May 12, 1997, $50,000.00 was wire transferred to Fenchurch from the line account, and on May 14, 1997 an unsuccessful attempt was made to transfer $25,000.00 to Fenchurch from the line account. (*Id.*). On June 3, 1997, $40,000.00 was wire transferred to Fenchurch from the line account. (*Id.*). Arwood signed the wire transfer authorizations, and Arwood had never signed any other checks or wire transfer authorizations from the line account. (*Id.* at 12). These payments form the basis of Dunn's Complaint against Arwood.

In Dunn's Second Amended Complaint, Dunn made two claims against Arwood consisting of allegations of a breach of fiduciary duty to the creditors of the Debtor and the resulting damage to the Debtor's estate. (Second Amended Complaint). Count One alleged that Arwood "breached his fiduciary duty to the creditors of Debtor by paying out the last available funds of the Debtor to Fenchurch." (Sec.Am. Compl., ¶ 41). Count Two alleges that tortious conduct by Arwood "aided and abetted" a breach of fiduciary duty by "whomsoever gave the instructions that the wire transfers were to be made to Fenchurch," and that Arwood "knew that the creditors were owed a fiduciary duty by the Debtor's management" which was breached by

the payments to Fenchurch. (Sec.Am. Compl.¶ 45).

Following trial, the Bankruptcy Court ruled that Dunn did have standing to recover alleged damages to the Debtor's estate arising from Arwood's breach of a fiduciary duty to third party creditors and Arwood's commission of a tort in aiding and abetting a primary wrongdoer in a breach of a fiduciary duty to third party creditors. The Bankruptcy Court also ruled that Dunn did not have to prove that Arwood obtained any personal benefit from the payments to Fenchurch. Based on these conclusions of law, the Bankruptcy Court awarded Dunn damages in the amount of $90,000.00 as principal and $28,508.50 as pre-judgment interest. These conclusions of law are the issues on appeal before the Court. Finally, the Bankruptcy Court had dismissed with prejudice Dunn's statutory claim for civil theft at the pleading stage, and Dunn now cross-appeals arguing that the Bankruptcy Court was in error when it dismissed the civil theft statutory claim.

## III. ANALYSIS

As noted above, the parties do not dispute the Bankruptcy Court's findings of fact, but only present to the Court for review the following four conclusions of law on appeal and cross-appeal.

### A. Standing of Trustee to Assert a Claim for a Breach of Fiduciary Duty to a Creditor

Arwood argues that Dunn, as Trustee, lacked standing to assert a claim for breach of fiduciary duty to a third party creditor. Arwood asserts that one cannot recover for a breach of duty that a wrongdoer may owe to a third party, and that Dunn lacks standing to prosecute a claim for breach of fiduciary duty to creditors because any such claim does not constitute the payments to Fenchurch. (Sec.Am. property of the Debtor's estate. Dunn counters that in this case the fiduciary duty involved was owed simultaneously to both the insolvent corporation and the collective creditor body, and that the Trustee's claims did constitute property of the Debtor's estate.

At oral argument, the parties agreed that *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979 (11th Cir.1990) is the last significant statement of the law on this issue by the Eleventh Circuit. Arwood cites *E.F. Hutton* in support of his argument. *E.F. Hutton* states that a bankruptcy trustee does not have standing to sue based on actions against only certain creditors identified as "a particular segment of customers of the bankrupt." *Id.* at 987. In that case, the Eleventh Circuit stated "[w]e recognize that there has been a divergence among the circuits concerning the ability of a bankruptcy trustee to bring actions against third parties on behalf of creditors of the bankrupt. On the facts of this case, however, we approve the reasoning of the Ninth Circuit in *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988), an analogous case factually and procedurally, and the Eighth Circuit in *Ozark*, where those respective circuit courts determined that the bankruptcy trustee does not have standing to assert claims of creditors of the bankrupt." *Id.* at 985. The Eleventh Circuit "emphasize[d] that our holding is restricted to the specific facts of this case." *Id.*

In this case, the bankruptcy judge concluded that there is significant authority stating that there are distinctions to the rule articulated by the Eleventh Circuit where the cause of action belonged to the corporation before the bankruptcy proceedings even commenced and where the trustee is acting both on behalf of the corporate debtor and the creditors as opposed to only a segment of

the creditor body. Here, Dunn alleges that both the corporation and the general creditor body were harmed by illegitimate transfers made by Arwood. (Amended Compl. ¶ 40). Dunn further argues that the corporation was harmed by the illegitimate transfers because these transfers depleted the corporation's resources leaving it unable to go into any Chapter 11 reorganization. Specifically, Dunn contends, and the Bankruptcy Court found, that the depletion did not leave enough resources in the corporation to operate it because the liquidity of the company was gone. (BR/DE # 109, 3/12/01 hearing transcript 26, 27, 28, 44, 45).

In the Bankruptcy Court's March 12, 2001 bench ruling, the court found that Arwood's actions precluded the company from partaking in an orderly and proper winding down and reorganization. In its ruling, the court first noted that Arwood "was, for all practical purposes, the person ultimately responsible for insuring that the debtor's assets were utilized properly in the wind down of its business." (*Id.* at 26). The court concluded that "Arwood absolutely did not engage in earnest good faith efforts to wind down the debtor's affairs.... So, what we have here is not a situation in which an officer or director simply paid a creditor and it was later determined to be a preference or fraudulent conveyance. Rather, when Mr. Arwood directed the payments to Fenchurch ... he knew, from his past experience in Kirk Lines, that it was wrong to pay a shareholder before paying creditors. He knew, at the time he made the payment, that the money could not be recovered in a future bankruptcy case and, despite his protestations to the contrary, he knew that the debtor was insolvent and would be unable to pay its remaining debts." (*Id.* at 26–27). In sum, "the facts show that Mr. Arwood simply determined how much money was available in the debtor's bank account and made the decision to pay all of that money to Fenchurch at a time when he knew or, upon any reasonable inquiry, should have known that the remaining assets of the company would be woefully inadequate to pay the debtor's creditors." (*Id.* at 28). Furthermore, the bankruptcy court found that Arwood's actions harmed both the company's creditors and the debtor company itself, concluding that "the debtor corporation was harmed by the misuse of its limited funds during the period in which Barrett was attempting to recover leased equipment, pay creditors as best he could, and complete an orderly liquidation." (*Id.* at 45).

Upon review of the facts of this case, the Court agrees with Dunn's contentions that Arwood's actions harmed both the general creditor class and the corporation, which was deprived of the opportunity to pursue proper liquidation or any Chapter 11 reorganization. As such, the Bankruptcy Court was correct in concluding that Dunn has standing in this matter. Furthermore, upon review of the case law, the Court agrees that this case is distinguished from the facts in *E.F. Hutton* because in that case the bankruptcy trustee was pursuing action involving only certain creditors identified as "a particular segment of customers of the bankrupt." *Id.* at 987.

Section 541 of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become part of an estate for the benefit of the creditors when a bankruptcy case is commenced. 11 U.S.C. § 541. Thus, a corporation's estate in bankruptcy would include all legal claims owned by the debtor, and those claims would be vested with the bankruptcy trustee who serves as the estate's legal representative. *See Matter of Consolidated Bancshares,* 785 F.2d 1249, 1253–4 (5th Cir.1986). The parties are in agreement

that the trustee has standing to assert and pursue any claims that the debtor had prior to filing the petition. *See Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

Moreover, courts have held that the trustee can pursue claims against officers and directors of a corporation pursuant to Section 541. *See In re General Development Corp.,* 179 B.R. 335, 338–39 (S.D.Fla. 1995) (including within the bankruptcy estate "any right of action the debtor corporation may have to recover damages for misconduct, mismanagement or neglect of duty by a corporate officer or director. The trustee in bankruptcy succeeds to that right"). The Bankruptcy Court found that where an individual, such as a director, has a fiduciary duty to a corporation, and he breaches that duty through the misappropriation of funds belonging to the corporation, the trustee has standing to redress this wrong. Arwood, however, argues that breach of fiduciary duty claims can only be pursued by creditors outside of bankruptcy. He asserts that because creditors will be the ultimate beneficiaries of any recovery by the trustee, it is only these creditors and not the debtor outside of bankruptcy, nor the trustee in bankruptcy, that has standing to pursue Dunn's claims.

In support of his argument, Arwood cites *Caplin,* which was also cited by the Eleventh Circuit in *E.F. Hutton,* in which the Supreme Court concluded that a trustee suing under the Bankruptcy Act did not have standing to bring an action on behalf of debentures issued by the debtor for claims of misconduct by an indenture trustee. *Caplin* stands for the proposition that the trustee only has authority to pursue claims belonging to the estate, and the Court stated that "nowhere in the statutory scheme [of the Bankruptcy Code] is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of debenture holders." *Id.* at 428, 92 S.Ct. 1678.

*Caplin* and its progeny, including *E.F. Hutton,* however, are distinguishable from this case because here the claims were assertable by the general creditor body, and not merely by a limited subgroup of creditors. In *Caplin,* the Court concluded that standing did not exist because the relevant claims were assertable outside of bankruptcy by certain limited subgroups of creditors, and were thus deemed not to be property of the bankruptcy estate to be collected and administered by the trustee. Here, as discussed above, the Bankruptcy Court concluded that the fiduciary duty Arwood breached was owed both to the insolvent corporation and to the collective creditor body, as well.[3] Likewise, Arwood cites *In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222 (8th Cir.1987), also cited by the Eleventh Circuit in *E.F. Hut-*

---

**3.** At the December 4, 2000 hearing regarding Defendant's Motion to Dismiss, the bankruptcy judge stated that *Caplin* "involve[d] a situation where you have got a claim that belongs to just a specific group of creditors and it is not a claim that the corporation would be able to pursue on its own." (12/4/00 hearing transcript at 28). In the court's March 12, 2001 bench ruling, the Bankruptcy Court concluded that "[i]t is this distinction of generalized claims versus particularized claims which limits the applicability of the *Caplin* case, the United States Supreme Court case upon which Arwood heavily relies.... However, *Caplin,* on its face, is easily distinguishable because there the bankruptcy trustee was asserting claims of a specific group of creditors, namely holders of certain of the debtor's debentures, within the whole of that class, which had specific claims against the estate. Here, the trustee is pursuing a claim common to all creditors, as all have been injured by the lack of availability of funds for payment within this bankruptcy case." (3/12/01 hearing transcript at 47–48).

*ton*, to support his contention that Dunn did not have standing to bring the claims in this case. In *Ozark*, however, the trustee attempted to bring an alter ego claim on behalf of corporate debtor creditors that did not become property of the estate. The *Ozark* court noted that "it is clear that causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate.... For example, these sections [within the Bankruptcy Act] give the trustee authority to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary duty, because these claims could have been asserted by the debtor corporation, or by its stockholders in a derivative action." *Id.* at 1225.

In this case, the claim which the Bankruptcy Court reduced to judgment could have been asserted by both the corporation through its remaining directors or by a shareholder in a derivative action on behalf of the corporation because both the general creditor body and the debtor corporation were harmed. (3/12/01 hearing transcript 26, 27, 28, 44, 45). Thus, because the "cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." *Id.* Likewise, in *Williams*, which was cited along with *In re Ozark* as support for the ruling in *E.F. Hutton*, the court noted that the corporation, "like the bankrupt corporation in *Caplin*, has no claim of its own that it could press against the defendant." *Williams*, 859 F.2d 664, 667. That is not the case here where both the corporation and the general creditor body were directly harmed by Arwood's actions, where the claims belong to both the corporation and the general creditor body, and the corporation has a claim against the defendant.[4]

In sum, the cases cited by Arwood are inapposite because they address situations in which bankruptcy trustees were asserting claims on behalf of a specific group of creditors (in *Caplin*, holders of certain of the debtor's debentures who had specific claims against the estate) rather than cases in which, like here, the trustee is

---

4. In *In re Flagship Healthcare, Inc.*, 269 B.R. 721, 727 n. 3 (Bankr.S.D.Fla.2001), Judge Mark states that "a more debatable issue of law, although one not properly framed by the parties in the instant case, is whether a trustee has standing to assert claims on behalf of all of the creditors of a debtor." *Id.* Judge Mark noted that in a related proceeding, the court held "that a trustee has no standing to assert a general claim on behalf of creditors of a debtor .... In coming to this conclusion, the court found persuasive the reasoning of the Eleventh Circuit in *E.F. Hutton & Co. v. Hadley* and District Judge Nesbitt's analysis of standing in *Feltman v. Prudential Bache Sec.*, 122 B.R. 466(S.D.Fla.1990)." *Id.* The Court concludes that Judge Nesbitt's decision in *Feltman* is similar to that in *E.F. Hutton* and is thus distinguishable from this case. In *Feltman*, the court held that a trustee lacked standing to raise claims on behalf of specific creditors, and even if the trustee could bring claims on behalf of general creditors the trustee had failed to sufficiently allege under the facts of that case that his claim was available to creditors generally. Specifically, the court stated "[p]laintiffs do not argue that, outside of bankruptcy, the creditors generally would be able to bring these claims under the laws of the State of Florida or federal law." *Feltman*, 122 B.R. at 472. "Rather, plaintiffs merely contend that in addition to injuring specific groups of creditors, defendants directly injured the debtor corporations thus derivatively injuring all creditors." *Id.* at 472–73. Here, however, Dunn specifically argues that the creditors generally could have brought these claims outside of bankruptcy. As such, the facts here distinguish this case from both *E.F. Hutton* and *Feltman*. In this case, the claims were assertable not only by limited subgroups of creditors, but generally by all creditors. In addition, the claims were the property of the bankruptcy estate to be collected and administered by the trustee.

pursuing a claim that is common to all creditors. In addition, as discussed above, *E.F. Hutton* is distinguishable because it did not involve harm to both the corporation and the general creditor body that is present here. *E.F. Hutton* merely states that a bankruptcy trustee does not have standing to sue based on actions against only certain creditors identified as "a particular segment of customers of the bankrupt." *Id.* at 987. Moreover, the Eleventh Circuit "emphasize[d] that our holding is restricted to the specific facts of this case." *Id.*

Finally, while Arwood cites *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991) for the proposition that "it is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself," that case is distinguished because the tortfeasor there was the debtor's sole officer, director, and shareholder, and his wrongdoing was thus imputed to the debtor corporation. *See In re Wedtech Securities Litig.*, 138 B.R. 5, 8 (S.D.N.Y.1992) (court distinguishes *Shearson Lehman Hutton* opinion while upholding the trustee's standing to bring claims against those alleged to have aided and abetted the breach of fiduciary duty owed the debtor by its former officers and directors, stating that where "guilt could be imputed to the corporation ... these damage claims belong to the creditor"). Here, the wrongdoing was not imputed to the Debtor.

At oral argument, Arwood's counsel argued that "the way this case was pled and the way it was organized for trial, the way it is described in the pretrial order, makes it clear this is not a claim ... indicated upon there being a simultaneous breach of the duty to the creditors and a breach of duty to the corporation although there were remarks to that effect by the bankruptcy trustee toward the conclusion of the matter that might be evidence to that effect." (Transcript at 6–7). While conceding that "[t]he warning signs were out there for sure" when the Court noted that the undisputed facts of the case indicated that the debtor "was going into serious financial trouble and there was clear evidence that at some point or another there were more creditors around than there was any kind of money to pay debt," Arwood's counsel maintained that "[t]here is not a word in the complaint or a word in the pretrial order that says that there is a recovery sought because there was a breach of Mr. Arwood's duty to the debtor corporation." (Transcript at 7–8).

In response, Dunn's counsel noted that paragraph 40 of the Amended Complaint alleges that Arwood owed a fiduciary duty to the creditors of the debtor and its estate. In the December 4, 2000 hearing, the bankruptcy judge concluded that "after going back into the amended complaint itself and looking at the cases more closely, I am going to deny the motion to dismiss and find that there is standing to proceed." (12/4/00 hearing trans. at 26). In doing so, the bankruptcy judge recognized that "the amended complaint itself does allege in no uncertain terms a separate claim for breach of fiduciary duty and alleges that Arwood owed a fiduciary duty to the creditors of the debtor and its estate." (*Id.*). At oral argument, Arwood's counsel responded by arguing that the Pretrial Order refers only to triable issues involving creditors "and not anything there refers to a breach of fiduciary duty to the debtor." (Transcript at 22). That argument, however, is contradicted by the record in this case. In the December 6, 2000 Order denying Arwood's Motion to Dismiss, the Bankruptcy Court concluded that "[f]or the reasons stated on the record, which are incorporated here by reference,

the Court concludes that Plaintiff has standing to prosecute the claims presented in this adversary proceeding since the claims include breach of a fiduciary duty allegedly owed to the debtor corporation." (12/6/2000 Order). Moreover, the Bankruptcy Court stated that "[a]lthough the Pretrial Order submitted by the parties includes primarily, if not exclusively, allegations that the fiduciary duty runs from the Defendant to the creditors of the estate, the Court finds it appropriate to allow the Pretrial Order to be amended consistent with the allegations in the Second Amended Complaint so that the issues for trial include whether the Defendant owed a fiduciary duty to the Debtor and the creditors of the estate and whether he breached that duty." (*Id.*).

Based upon the Bankruptcy Court's conclusions, this Court asked Arwood's counsel at oral argument, "[W]as there not a claim on behalf of the estate that the bankruptcy trustee was seeking to pursue as well as for the creditors and doesn't that make a significant difference here?" (Transcript at 24). Arwood's counsel responded, "Yes, I must concede that, Your Honor." (*Id.*). Further, the Court asked, "[T]hen does that not distinguish this case from the specific facts of *Hutton* which did not involve those issues?" (Transcript at 25). "Those facts were different and I believe that is a distinction, sir," Arwood's counsel replied. (*Id.*).

Upon review of the facts in this case and the Bankruptcy Court's findings, the Court concludes that both the general creditor body and the corporation itself were harmed by Arwood's actions. The creditors were not paid, and the corporation's opportunities to rehabilitate itself pursuant to, for example, Chapter 11 reorganization, were eliminated. That was not the case in *E.F. Hutton*, where the bankruptcy trustee was not pursuing claims available to the general creditor body, and where he "conceded that this case concerns only those fully paid GIC customer securities sold in July and September, 1985, by Hutton pursuant to its margin agreement with GIC." *E.F. Hutton*, 901 F.2d 979 at 984. The fiduciary duty at issue in this matter was owed simultaneously to both the insolvent corporation and the collective creditor body, and Dunn has standing to recover damages to the Debtor's estate resulting from a breach of that fiduciary duty.

For all these reasons, and because the claims asserted here did not solely belong to a limited group within the creditor body, but to the Debtor and the creditor body, the Court concludes that the Bankruptcy Court was correct in concluding that Trustee Dunn had standing to pursue her claims.

## B. Liability for Payments if Party Does not Receive Personal Benefit

Arwood next argues that Florida law insulates directors from personal liability unless the director has breached his duties as a director and he received improper personal benefit from the transaction. Arwood asserts that he received no benefit, either directly or indirectly, from the payments to Fenchurch, and as such he may not be held liable for those payments. Dunn counters that no benefit to Arwood need be shown in order to hold Arwood liable for breach of fiduciary duty to the insolvent corporation.

 Arwood has pointed to no authority establishing that absent receipt of personal benefit a director is insulated from liability for breach of fiduciary duty or aiding and abetting breach of fiduciary duty. The elements for breach of fiduciary duty are, "as required by Florida law, namely, a repose of trust and confidence and an express acceptance of that repose

of trust and confidence by defendant, [which] existed in the relationship of the parties in this case." *Argonaut Development Group, Inc. v. SWH Funding Corp.*, 150 F.Supp.2d 1357, 1363 (S.D.Fla.2001) (also stating that "under Florida law, a fiduciary relationship is established where confidence is reposed as a result of the position of superiority and influence held by the fiduciary") (citations omitted). The four elements for a claim of aiding and abetting a breach of fiduciary duty are: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *See AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1380 (S.D.Fla.1991) (citations omitted). Receipt of personal benefit is not part of the analysis in determining liability for these causes of action.

The cases cited by Arwood in support of his contention merely illustrate examples in which directors were found liable for wrongful conduct and directly benefitted from that conduct. These cases do not establish an independent element requiring proof of benefit to recover against a director who breaches, or aids and abets the breach of, a fiduciary duty. For example, in *In re F & C Services, Inc.*, 44 B.R. 863, 874–75 (Bankr.S.D.Fla.1984), the court held that a director breached his fiduciary duty where he engineered a fraudulent transfer of the debtor's assets for his own personal benefit. The case does not stand for the proposition, however, that the director would be immune from liability for his breach if the fraudulent transfer was not engineered for his personal benefit. Likewise, Arwood cites *Diamond Int'l Corp. v. SJH Enters., Inc.*, 487 So.2d 1089, 1091 (Fla. 5th DCA 1986), for the proposition that under Florida law Arwood is not liable for any breach unless he personally benefitted from that breach. Diamond, however, merely states that "[t]o permit directors to use their fiduciary position and inside knowledge to obtain preferential treatment at the expense of third party creditors is manifestly unfair." *Id.* While this statement may be true, it does not stand for the proposition that Florida law has added a new element of receipt of personal benefit to any claims seeking to hold a tortfeasor liable for breaching fiduciary duties. Likewise, the other cases cited by Arwood do not establish that proof of personal benefit is an additional element Dunn needs to prove in this case.

To the contrary, there is broad authority, both in and outside Florida, establishing that claims may be maintained against directors where there is no showing of any personal benefit. *See Ft. Myers Development Corp. v. J.W. McWilliams Co.*, 97 Fla. 788, 122 So. 264, 268 (1929) ("The test [for liability for aiders and abettors] is participation, not motive or degree of culpability. And liability may attach to such participants, although they do not share in the profits of the fraud."); *In re Koszuth*, 43 B.R. 104, 107 (Bankr.M.D.Fla.1984) ("[T]his Court finds that an officer of a corporation who knowingly causes the misappropriation of trust property by the corporation is personally liable regardless of whether the officer personally profited.") (citations omitted); *In re Pieper*, 119 B.R. 837, 840 (Bankr.M.D.Fla.1990) ("[W]here a corporate officer causes defalcation or fraud by the corporation, that officer may be personally liable, whether or not he personally profits from the defalcation or fraud, and in turn, that liability may be nondischargeable."); *In re Transport Clearings–Midwest, Inc.*, 16 B.R. 890, 895–96 (Bkrtcy.W.D.Mo.1979) ("[O]fficers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the

uses of the corporation, although they derived no personal benefit therefrom.") (citations omitted); *In the Matter of Folliard*, 10 B.R. 875, 876 (D.Md.1981) ("An officer of a corporation 'who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of trust committed by the corporation.' An officer is so liable even if he did not profit from the transaction.") (citations omitted).

Because proof of personal benefit is not an element of the causes of action in this case and Arwood has provided no authority to the contrary, the Court affirms the Bankruptcy Court's conclusion of law that personal financial benefit is not an element of Dunn's causes of action.

## C. Award of Prejudgment Interest

Next, Arwood argues that the Bankruptcy Court was in error in granting prejudgment interest at 11%, which he alleges is the current Florida rate, calculated from the dates of the payments to Fenchurch in May and June, 1997. Arwood asserts that the proper interest calculation is to grant interest at the rates that existed during each of the years in issue and to begin the calculation from the date the adversary proceeding was commenced. Dunn counters that while she sought prejudgment interest at the 11% rate, the Bankruptcy Court awarded only 8% as the prejudgment rate of interest to be used in this case. While Dunn does not point to anything in the record establishing that an 8% rate was used, Dunn takes the $28,508.50 awarded as prejudgment interest and calculates that an 8% rate led to the $28,508.50 figure. Dunn states that if the Bankruptcy Court had used the 11% rate, the prejudgment interest figure would have been $39,172.10. Dunn further argues that the Bankruptcy Court was correct in calculating interest from the dates

of the payments to Fenchurch, but incorrect in failing to award prejudgment interest at 11% pursuant to Florida Statutes §§ 55.03 and 687.01.

The parties are uncertain as to which interest rate was applied in this case, whether state or federal law governed the Bankruptcy Court's determination of prejudgment interest, and when the prejudgment interest granted to Dunn began to accrue. In its Final Judgment Against Defendant (BR/DE # 115), the Bankruptcy Court referenced 28 U.S.C. § 1961 in awarding postjudgment interest to Defendant. It is unclear from the Order whether the statute also influenced and informed the Bankruptcy Court's award of prejudgment interest. While 28 U.S.C. § 1961 addresses postjudgment interest, bankruptcy courts will sometimes apply the statute in fixing prejudgment interest. *See Industrial Risk Insurers v. MAN Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir.1998) ("In the absence of a controlling statute, federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is also a matter for their discretion. That choice is usually guided by principles of reasonableness and fairness, by relevant state law," and 28 U.S.C. § 1961); *In re Investment Bankers*, 135 B.R. 659, 669–70 (Bankr.D.Colo.1991) (same); *In re H.P. King*, 64 B.R. 487, 491–92 (Bankr.E.D.N.C.1986) (same). Eleventh Circuit precedent establishes that prejudgment interest may be awarded in the discretion of the court, and that courts are not required to use 28 U.S.C. § 1961 in computing such interest. *See Industrial Risk Insurers v. MAN Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446 (11th Cir.1998) ("Awards of prejudgment interest are equitable remedies, to be awarded in the district court's sound discretion."); *Smith v. American Int'l Life Assurance*

*Co. of New York*, 50 F.3d 956, 958 (11th Cir.1995) ("Because district courts have discretion in determining prejudgment interest rates, we hold that district courts are not required to use § 1961 in computing such interest.").

Citing an Eleventh Circuit case in which the court affirmed the district court's decision to apply the statutory interest rate in determining prejudgment interest in an ERISA case, Dunn argues that even in cases in which a court could have applied 28 U.S.C. § 1961, courts have applied a more generous state interest rate given the "equities of a given case." Moreover, Dunn argues that when federal courts adjudicate state law claims, they generally "consult" state law in determining the proper rate of prejudgment interest.

 Given that the award of prejudgment interest is in the discretion of the lower court, this Court would review the Bankruptcy Court's determination for an abuse of discretion. It is clear from reading the parties' briefs and the record in this case, however, that the parties are unclear as to what rate the Bankruptcy Court applied in determining the award of prejudgment interest. In Arwood's initial brief, he asserts that the Bankruptcy Court judge applied an 11% rate, the current Florida rate. Dunn argues that the judge applied an 8% rate. Dunn asserts that Bankruptcy Court did not consult state law in setting the prejudgment interest rate, while Arwood concludes that the Bankruptcy Court relied on state law. In the Bankruptcy Court's bench ruling on March 12, 2001, the judge expressed uncertainty as to which rate would apply, and whether federal or state law would govern any award of prejudgment interest. (BR/DE # 109, 51–60). It is unclear from the Order of Final Judgment what the Bankruptcy Court concluded, and this uncertainty is reflected in the parties' arguments on this point, as outlined above. In fact, in the Order of Final Judgment, the Bankruptcy Court awarded damages "in accordance with this Court's Finding of Fact and Conclusions of Law announced in open court on March 12, 2001, all of which are incorporated herein by reference." Those Findings of Fact and Conclusions of Law, however, come to no final conclusion on the issues surrounding prejudgment interest now contested by the parties. As such, the Court remands the following issues to the Bankruptcy Court for clarification, and as need be, determination: (i) whether federal or state law applies in determining the award of prejudgment interest to Dunn; (ii) the applicable rate of interest in the award of prejudgment interest to Dunn; and (iii) whether prejudgment interest begins to accrue from the payments to Fenchurch or from the date this proceeding was commenced.

## D. Cross–Appeal: The Bankruptcy Court's Dismissal of the Civil Theft Claim

On cross-appeal, Dunn argues that the Bankruptcy Court's findings in this case establish, against a clear and convincing standard of proof, that Arwood is liable for civil theft under Fla. Stat. § 772.11. Thus, Dunn concludes that it was error for the Bankruptcy Court to dismiss Dunn's claim for civil theft at the pleading stage, thereby eliminating the statutory remedies of treble damages and attorneys' fees that might have been available to Dunn.

Dunn's original Complaint includes a claim for civil theft. At the September 28, 1999 hearing on Arwood's Motion to Dismiss, Judge Mark stated: "I'm going to grant the motion to dismiss with leave to amend. I do not believe the complaint as drafted is sufficient to state a claim for civil theft because there's too many either/ors. It lacks a specific allegation of

Mr. Arwood knowingly taking money from the debtor's coffers that he knew did not belong to the party that he was paying the money to." (BR/DE # 128, 3). The Bankruptcy Court went on to list several allegations Dunn would have to make in an amended complaint, stating, *inter alia,*

"[Y]ou would have to allege that Mr. Arwood knew this was not a just debt or, and it may not be that far-fetched based on the history that you have put in the complaint, that Mr. Arwood knew or had good reason to know under these circumstances there were going to be a bunch of unpaid creditors, that there was going to be another bankruptcy and that, whether a fraudulent conveyance because it was a capital contribution or a preference because it was ultimately determined to be an insider loan, that these payments were being made to an entity that was going to be judgment-proof and that it was a breach of fiduciary duty and perhaps a theft to—well, that really gets into the breach of fiduciary duty, that he breached his fiduciary duty to other creditors by making payment that he knew would be avoidable in bankruptcy, but not recoverable in bankruptcy and the he knew that a bankruptcy was inevitable." (Id. at 3–4).

Dunn complains that she carefully followed these suggestions in filing her Amended Complaint, but that on November 30, 1999, the Bankruptcy Court nonetheless ruled as a matter of law that the monies Arwood paid out to Fenchurch could never constitute civil theft as a matter of law, and the count for civil theft was dismissed with prejudice.

Dunn also cites the Eleventh Circuit's holding in *Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir.1987), in which the court concluded that where defendants accepted plaintiff's money and "fraudulently used the offer of a contract as a ruse to obtain Rosenthal Toyota's funds," the jury's finding of civil theft under Florida's civil theft statute was proper.

Florida Statutes § 772.11, Civil Remedy for Theft, provides that: "Any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of any violation of the provisions of ss. 812.012–812.037 has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts." Fla. Stat. § 772.11. The statute also requires anyone filing an action under the section to "make a written demand" of the other party. *Id.* Finally, Florida law requires a showing of "felonious intent" in order to hold a party liable for civil theft. *See Lewis v. Heartsong, Inc.,* 559 So.2d 453, 454 (Fla. 1st DCA 1990) ("On appeal, appellees argue that appellant failed to sufficiently allege civil theft, which requires, according to the appellees, the allegation that the act was done with a 'felonious intent,' ... Appellees are correct in asserting that a felonious intent to steal is a necessary element of proof in an action for damages based on a violation of section 812.014(1).") (citation omitted); *Ames v. Provident Life & Acc. Ins. Co.,* 942 F.Supp. 551, 560 (S.D.Fla. 1994) ("The instruction given also failed to include any mention of the state of mind required for civil theft. The intent necessary for larceny is *animus furandi,* which means intent to steal, or felonious intent."). Florida Statutes § 812.014 defines theft for purposes of Fla. Stat. § 772.11 as follows: "A person commits theft if he or she knowingly obtains or uses ... the property of another with intent to, either temporarily or permanently (a) Deprive the other person of a right to the property or a

benefit from the property; or (b) Appropriate the property ... to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014(1).

Dunn points to specific sections of the Bankruptcy Court's March 12, 2001 ruling to establish that the court was in fact able to reach conclusions consistent with a finding for liability under the above-cited Florida civil theft and theft statutes given clear and convincing proof of injury, statutory notice, and felonious intent. For example, the Bankruptcy Court found that "Arwood did not merely remain passive while the corporate entity was looted by Fenchurch. He actually participated in the transfer of the assets with knowledge that the payment was wrong." (BR/DE # 109, 38–39). In addition, the Bankruptcy Court also concluded that "when Mr. Arwood directed the payments to Fenchurch, he knew that he was sending the money offshore to the debtor's shareholder.... He knew, from his past experience in Kirk Lines, that it was wrong to pay a shareholder before paying creditors. He knew, at the time he made the payment, that the money could not be recovered in a future bankruptcy case and, despite his protestations to the contrary, he knew that the debtor was insolvent and would be unable to pay its remaining debts." *Id.* at 27. Given these findings, Dunn argues that the Bankruptcy Court clearly erred in dismissing her claim for civil theft at the pleadings stage.

In response, Arwood contends that Dunn did not comply with the statute's notice requirement, and that the Bankruptcy Court was not applying the clear and convincing evidence standard contained in the statute when it made its conclusions of fact and law in the March 12, 2001 bench ruling. Regarding the statutory notice requirement, the Court is satisfied that the April 23, 1999 demand letter, attached to Dunn's Reply as Exhibit A, fulfilled the statutory notice requirement. Second, while Arwood claims that Dunn did not sufficiently allege felonious intent in its claim for civil theft, Dunn clearly alleged exactly that in Paragraph 43 of the Second Amended Complaint for Civil Theft, Breach of Fiduciary Duty, and Aiding and Abetting. At oral argument, Dunn's counsel argued "felonious intent. It is not an interpretation. It is there literally. It is literally unambiguously in paragraph 41 of the Amended Complaint." (Transcript at 28). Finally, Arwood is correct in stating that the preponderance of the evidence standard used by the Bankruptcy Court during the bench ruling is materially less stringent than the clear and convincing standard required by the statute. *See In re Frank,* 753 So.2d 1228, 1234 (Fla.2000) ("This Court must then review the findings and determine whether they meet this quantum of proof [clear and convincing evidence], a standard which requires more proof than a 'preponderance of the evidence' ....") (citation omitted).

Given, however, the Bankruptcy Court's conclusions cited above that Arwood knowingly directed the payments to Fenchurch, knowingly sent the money offshore to a shareholder of the debtor, knew that it was wrong to pay a shareholder before creditors, knew that the money could not be recovered in a future bankruptcy case, knew that the debtor was insolvent and would be unable to pay its remaining debts, and knew that it was a breach of fiduciary duty to do so, the Court concludes that it was error for the Bankruptcy Court to dismiss the statutory civil theft claim at the pleading stage. In so doing, the Court expresses no opinion as to whether Trustee Dunn may meet the statute's clear and convincing evidence standard, but merely concludes that Dunn's allegations of civil theft are sufficient to survive a motion to dismiss under

the more lenient standards applicable to dismissal motions.[5] Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. The Bankruptcy Court's determination that Dunn had standing to pursue her causes of action is AFFIRMED.

2. The Bankruptcy Court's determination that no showing of personal benefit is necessary to hold Arwood liable under Dunn's causes of action is AFFIRMED.

3. Regarding the Bankruptcy Court's award of prejudgment interest to Dunn, the Court REMANDS the following issues to the Bankruptcy Court for clarification, and, as need be, determination: (i) whether federal or state law applies in determining the award of prejudgment interest to Dunn; (ii) the applicable rate of interest in the award of prejudgment interest to Dunn; and (iii) whether prejudgment interest begins to accrue from the payments to Fenchurch or from the date this proceeding was commenced.

4. Regarding the question of whether it was error for the Bankruptcy Court to dismiss the statutory claim of civil theft at the pleading stage, the Court REVERSES the Bankruptcy Court's dismissal of the civil theft claim at the pleading stage and remands the claim to the Bankruptcy Court for consideration on the merits not inconsistent with this Order.

5. This appeal is CLOSED. All pending motions are DISMISSED AS MOOT.

---

5. To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences from those facts in the light most favorable to the Plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v.* *Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a Plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).